[Cite as *State v. Schwamberger*, 2014-Ohio-4733.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY


State of Ohio                                          Court of Appeals No. L-13-1236

       Appellee                                      Trial Court No. CR0201301793

v.

Nick Schwamberger                                **DECISION AND JUDGMENT**

       Appellant                                     Decided:  October 24, 2014


* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Evy M. Jarrett, Assistant Prosecuting Attorney, for appellee.

Lawrence A. Gold, for appellant.

* * * * *


**OSOWIK, J.**

{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common

Pleas that found appellant guilty of one count each of rape, sexual battery and gross

sexual imposition following a jury trial.  For the following reasons, we affirm.

**{¶ 2}** On January 14, 2012, appellant, the victim, and their friends Chris Mildon and Jordan Garcia gathered at appellant's house to watch a football game. Thereafter, Garcia drove the group to another friend's house for a party. When the victim became physically ill after drinking heavily, appellant, Mildon and Garcia decided to take her back to appellant's house. When they arrived at the house, appellant and Garcia helped the victim inside, up the stairs and into bed. They kept an eye on the victim for a few minutes and then went to the basement to play beer pong. A short while later, appellant went upstairs. Garcia then went upstairs to check on the victim and saw appellant asleep on the bed with her. When Garcia checked on her a third time, he saw appellant on top of her and believed they were having intercourse. Garcia and Mildon told appellant to leave her alone and appellant then got up and went downstairs. The following morning, Garcia told the victim what he believed he had witnessed the night before in the bedroom. The victim then called her mother and went to the hospital for a sexual assault examination.

**{¶ 3}** On May 20, 2013, appellant was indicted on one count of rape in violation of R.C. 2907.02(A)(1)(c) and (B), two counts of sexual battery in violation of R.C. 2907.03(A)(2) and (B), and one count of gross sexual imposition in violation of R.C. 2907.05(A)(5) and (C). The case came to trial before a jury on September 23, 2013, and on September 25, 2013, the jury found appellant guilty of one count of rape, one count of sexual battery and one count of gross sexual imposition. For the charge of rape, appellant was sentenced to term of three years imprisonment. For the charge of sexual battery, he was sentenced to a term of 36 months and for the charge of gross sexual imposition to a

2.

term of 12 months. The trial court ordered that each sentence be served concurrent with the others for an aggregate term of three years. Appellant filed a timely notice of appeal.

{¶ 4} Appellant now sets forth the following two assignments of error:

First Assignment of Error

Appellant received ineffective assistance of counsel in violation of his rights under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, § 10 of the Constitution of the State of Ohio.

Second Assignment of Error

The Jury's verdict was against the manifest weight of the evidence introduced by the State at trial.

{¶ 5} In support of his first assignment of error, appellant asserts that trial counsel was ineffective for several reasons. First, appellant asserts that counsel's theory of the case – that the victim consented to sexual conduct with appellant and that appellant did not know or have reasonable cause to believe that she was substantially impaired -- was "tenuous at best." Appellant states that such a defense was ineffective because evidence was presented at trial that the victim was so impaired after partying with appellant and their other friends that she became physically ill. Appellant argues that such a theory was offensive to the sensibilities of the jurors and failed to take into account the inability of an intoxicated individual to offer voluntary consent.

{¶ 6} Appellant also asserts that counsel was ineffective by failing to properly impeach Garcia with a prior statement to police. When trial counsel asked Garcia,

3.

"When you told the officer it was between 1:30 and 2 that [the victim] threw up, you didn't really know the time?" Garcia responded, "I didn't tell the officer anything." When trial counsel attempted to question Garcia further about his statement to police, the state objected on grounds that Garcia had neither written nor adopted the report which contained the statement. The trial court ruled that the document could be used only if it was Garcia's recorded or handwritten statement or if Garcia had reviewed the document, stated it was accurate and signed it. None of those conditions applied. Significantly, appellant does not assert that the trial court made an erroneous ruling. Rather, he appears to assert that there would have been a proper method for counsel to use to impeach the witness and that counsel's manner of referring to the police report was ineffective.

{¶ 7} It is well-established that claims of ineffective assistance of counsel are reviewed under the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed. 2d 674 (1984). In order to prove ineffective assistance of counsel, appellant must demonstrate both that counsel's representation fell below an objective standard of reasonableness and that, but for counsel's perceived errors, the outcome would have been different. *Id.* at 687.

{¶ 8} Applying *Strickland* to the record herein and the examples cited by appellant, we are unable to find that counsel's representation fell below a standard of reasonableness or that, but for counsel's perceived errors, appellant would not have been convicted. Based on the foregoing, we find that appellant's first assignment of error is not well-taken.

4.

**{¶ 9}** In his second assignment of error, appellant asserts that the jury's verdict was against the manifest weight of the evidence. In support, appellant argues that the jury failed to take into account appellant's testimony that the victim was not substantially impaired and participated in, if not initiated, the sexual conduct.

**{¶ 10}** "A manifest weight challenge questions whether the state has met its burden of persuasion." *State v. Davis*, 6th Dist. Wood No. WD-10-077, 2012-Ohio-1394, ¶ 17, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). In making this determination, the court of appeals sits as a "thirteenth juror" and, after "reviewing the entire record, weights the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id*. at 386.

**{¶ 11}** R.C. 2907.02, rape, states in pertinent part:

(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender * * * when any of the following applies:

* * *

(c) The other person's ability to resist or consent is substantially impaired because of a mental or physical condition * * * and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition * * *.

**{¶ 12}** R.C. 2907.03, sexual battery, states in pertinent part:

(A) No person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply:

(2) The offender knows that the other person's ability to appraise the nature of or control of the other person's own conduct is substantially impaired.

**{¶ 13}** R.C. 2907.05, gross sexual imposition, states in pertinent part:

(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender * * * when any of the following applies:

* * *

(5) The ability of the other person to resist or consent * * * is substantially impaired because of a mental or physical condition * * * and the offender knows or has reasonable cause to believe that the ability to resist or consent of the other person * * * is substantially impaired because of a mental or physical condition * * *.

**{¶ 14}** The victim testified as to the events of the night of January 14, 2012, when she, appellant, and their friends Chris Mildon and Jordan Garcia went to a party for their friend Kelsey Bekier. The victim testified that she has known appellant since both were in the 5th grade and that appellant was "like a brother" to her. They never dated one

another and she was not interested in a sexual relationship with him because "[h]e was my brother." She testified that on the night in question she drank "quite a lot." The victim recalled dancing and having a good time before she started to feel ill. She recalled vomiting on the front porch of her friend's house and has no memories after that until she awoke the following morning. She did not recall leaving the party, what time she left, talking to Mildon, Garcia or appellant, or who drove her back to appellant's house. The victim did not recall engaging in sexual conduct with appellant or suggesting to appellant that they do so.

{¶ 15} The state also presented the testimony of the Sexual Assault Nurse Examiner at Toledo Hospital who examined the victim the following morning and several forensic scientists with the Ohio Bureau of Criminal Investigation who analyzed various specimens from the rape kit prepared at the hospital. Testimony revealed that a partial DNA profile from a vaginal swab from the rape kit was consistent with the Y chromosome DNA profile from appellant. A partial DNA profile from the victim's breast swab was consistent with appellant's DNA profile.

{¶ 16} Detective Kevin Bigenho testified that he investigated the case and interviewed appellant. A recording of the interview, in which appellant admitted penetrating the victim's vagina, was played for the jury.

{¶ 17} Jordan Garcia testified that when the victim became ill at the party, he, Mildon and appellant decided to take her back to appellant's house. Garcia and appellant helped the victim to the car and put her in the back seat. He further testified that

7.

appellant was not "nearly as drunk" as the victim, who "could not form a sentence or say a word" and was "pretty much blacked out." Chris Mildon testified that he became concerned about the victim when she began vomiting. Mildon, Garcia and appellant decided the victim should leave and helped her to the car. When they arrived at appellant's house, they helped her to bed in a room on the second floor and appellant placed a trash can by the bed in case she became ill again. Mildon testified that the victim was unresponsive at that time, "pretty much blacked out." He stated that they tried talking to her but she "couldn't say anything." Mildon, Garcia and appellant then went downstairs. After playing "drinking games" for a while, appellant left the basement. Mildon and Garcia went upstairs to check on the victim twice and saw her and appellant sleeping. When they went up a third time they saw appellant "on top of [the victim]" and told appellant to stop. The victim did not appear to be awake. When appellant moved away from the victim, Garcia and Mildon told him to go downstairs with them. Garcia returned upstairs and found the victim unable to talk.

{¶ 18} Appellant's mother, Sue Bekier, testified as to her son's friendship with the victim since both were in 5th grade. Bekier did not recall hearing any "commotion" on the night of January 14, 2012.

{¶ 19} Appellant testified that he, Garcia, Mildon and the victim each bought a 12-pack of beer to take to the party. He estimated that he drank seven beers and three or four Jello shots at the party, which caused him to be "tipsy." Appellant did not notice the victim's alcohol consumption until she vomited. At that point, he, Garcia and Mildon

8.

decided to take her back to appellant's house to sleep. Appellant testified that the victim "was not blacked out at all" when they arrived at his house and said she asked him to turn on the T.V. in the bedroom. After a few minutes, he went upstairs to check on the victim and saw that she was still watching a show. Appellant further testified that the victim then asked him to stay with her until she fell asleep so he lay down on the bed beside her.

{¶ 20} Our review of the record reflects that the jury heard the testimony of the victim as well as Garcia and Mildon, who witnessed the victim's behavior and physical condition at the party as well as afterward when they drove her to appellant's house and put her to bed. Both Garcia and Mildon testified that the victim appeared highly intoxicated. In contrast, appellant testified that the victim willingly participated in sexual conduct with him and that he did not observe how much she drank at the party. Appellant's testimony must be weighed against that of Garcia and Mildon, both of whom said that the victim did not speak or move and was "passed out" on the bed when they left her, as she was each time they checked on her.

{¶ 21} When conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the fact finder believed the prosecution testimony. *State v. Conner*, 192 Ohio App.3d 166, 2011-Ohio-146, 948 N.E.2d 497 (6th Dist.). The trier of fact is best able "to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 24, citing *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d

9.

77, 80-81, 461 N.E.2d 1273 (1984). We find no evidence that the fact finder lost its way or created a manifest miscarriage of justice in this case despite conflicting testimony. Accordingly, appellant's second assignment of error is found not well-taken.

{¶ 22} On consideration whereof, the judgment of the Lucas County Court of Common Pleas is affirmed. Costs of this appeal are assessed to appellant pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.         _____
                                         JUDGE
Thomas J. Osowik, J.

James D. Jensen, J.           _____
CONCUR.                                        JUDGE

                                     _____
                                        JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.

10.