[Cite as *State v. Brown*, 2017-Ohio-1114.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. Patricia A. Delaney, P. J.<br>Hon. John W. Wise, J.<br>Hon. Earle E. Wise, Jr., J. |
| Plaintiff-Appellee | |
| -vs- | Case No. 2016 CA 0043 |
| STANLEY D. BROWN, JR. | |
| Defendant-Appellant | O P I N I O N |

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Criminal Appeal from the Court of Common Pleas, Case No. 2015 CR 0698 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | March 28, 2017 |

APPEARANCES:

| For Plaintiff-Appellee | For Defendant-Appellant |
|---|---|
| BAMBI COUCH PAGE<br>PROSECUTING ATTORNEY<br>DANIEL M. ROGERS<br>ASSISTANT PROSECUTOR<br>38 South Park Street<br>Mansfield, Ohio 44902 | BYRON CORLEY<br>22 North Walnut Street<br>Mansfield, OHio 44902 |

*Wise, J.*

{¶1}   Appellant Stanley D. Brown, Jr. appeals his conviction on two counts of Aiding and Abetting Rape and one count of Kidnapping following a jury trial.

{¶2}   Appellee is the State of Ohio.

### STATEMENT OF THE FACTS AND CASE

{¶3}   On August 11, 2015, a Richland County Grand Jury indicted Appellant Stanley D. Brown, Jr. on three (3) counts related to Appellant's participation in the gang-rape of an intoxicated fifteen (15) year old girl at the Mansfield Rodeway Inn at 880 Laver Road in Mansfield, Ohio on January 3, 2015. Counts 1 and 2 charged Appellant with alternative forms of Aiding or Abetting Rape, both first-degree felonies pursuant to R.C. §2907.02(A)(1)(C) and (A)(2) and §2923.03(A)(2). Count 3 charged Appellant with Kidnapping, a first-degree felony pursuant to R.C. §2905.01(A)(4).

{¶4}   The relevant facts are as follows:

{¶5}   On Saturday, January 3, 2015, Amir Evans invited fifteen (15) year old J.J. to a party at the Rodeway Inn at 880 Laver Road, Mansfield, Ohio. (T. at 217-219). Evans had Trae Coopwood pick J.J. up and take her to the Rodeway Inn. (T. at 219).

{¶6}   After being dropped off at the Rodeway Inn by Coopwood, J.J. met up with Evans, who rented two (2) rooms. (T. at 220, 224). J.J., Evans, Jermaine Hughes (hereinafter "Co-Defendant Hughes") and four (4) to five (5) other people went into the first room and began partying. (T. at 221-223). During the party in the first room, J.J. consumed alcohol, Marijuana, and psychedelic mushrooms. (T. at 221, 222, 267, 268).

{¶7}   Approximately ninety (90) minutes after the party began, Appellant Stanley Brown, Jr., Eyrihk Murphy (hereinafter "Co-Defendant Murphy") and several other people

arrived at the Rodeway Inn and began partying with J.J., Evans and Co-Defendant Hughes. (T. at 222, 223).

{¶8} Approximately two (2) hours after J.J. arrived at Rodeway Inn, Appellant Brown, Co-Defendant Hughes, Co-Defendant Murphy, J.J., Evans, and several other people moved from the first room into the second room rented by Evans. (T. at 224, 225). Evans then left the second room, returning to the first room and leaving J.J. alone with Appellant Brown, Co-Defendant Hughes, and Co-Defendant Murphy. While in the second room, J.J. participated in a drinking game with Southern Comfort and Patron tequila. (T. at 226). As a result of her high level of intoxication, J.J. lost consciousness. (T. at 228).

{¶9} Upon regaining consciousness, J.J. discovered Co-Defendant Hughes vaginally penetrating her without her consent. (T. at 229). Appellant Brown was encouraging Co-Defendant Hughes as he vaginally raped J.J. and told J.J. to relax. (T. at 230-233). In addition to encouraging Co-Defendant Hughes, Appellant Brown, who was sitting on the bed directly next to J.J.'s head throughout the rape, pushed J.J. down by her shoulder when she tried to get up from the bed. (T. at 229-231, 470-472). Appellant also shoved his penis in J.J.'s face and attempted to force J.J. to perform oral sex on him. (T. at 232, 233, 470-472).

{¶10} While the rape was occurring, Evans attempted to regain entry into the second room two (2) different times. (T. at 595-599). However, the occupants locked the door and ignored Evans knocking on the door. *Id.* Following the rape, J.J. returned to the first room, confronted Evans, and told him what Appellant Brown, Co-Defendant Hughes, and Co-Defendant Murphy had done to her. (T. at 236, 237, 600, 601). However, neither

J.J. nor Evans contacted the police, as they were afraid they would get in trouble due to their underage drinking and drug use. (T. at 616, 617).

{¶11} After returning home from Rodeway Inn on Sunday, January 4, 2015, J.J. neither showered nor changed her clothes from the night before. (T. at 239). Instead, she ran errands with her mother and hoped that the events of January 3, 2015 would remain a secret. *Id.* However, when J.J. went to school on Monday, January 5, 2015, several of her friends made contact with her regarding what happened on January 3, 2015 at the Rodeway Inn. (T. at 239, 240).

{¶12} Late in the evening on January 5, 2015, J.J. had a friend take her to OhioHealth Mansfield for a SANE exam, as she was still too embarrassed to tell her mother what happened at Rodeway Inn on January 3, 2015. (T. at 240, 241). During the SANE exam, J.J. advised SANE nurse Tammy Robertson of the events of January 3, 2015, and identified Appellant Brown and Co-Defendant Hughes as two (2) of her attackers. (T. at 329, 330). Ms. Robertson completed a rape kit and collected anal and vaginal swabs, pubic hair, and fingernail clippings from J.J. (T. at 325-329). Ms. Robertson also made contact with Richland County Sheriff's Office and J.J.'s mother in order to collect J.J.'s clothes from January 3, 2015. (T. at 331, 332). Richland County Sheriff's Deputy Broom collected J.J.'s rape kit and clothing from January 3, 2015, and submitted them to Bureau of Criminal Investigation (hereinafter "BCI"). (T. at 578-583).

{¶13} On January 8, 2015, Richland County Sheriff's Deputy Dittrich interviewed J.J., who provided a statement regarding the rape at Rodeway Inn on January 3, 2015, and identified Appellant Brown, Co-Defendant Hughes and Co-Defendant Murphy as her attackers. (T. at 507-511). Deputy Dittrich then made contact with Evans and obtained

his statement regarding the events of January 3, 2015. (T. at 509). Following her interviews with J.J. and Evans, Deputy Dittrich obtained search warrants for DNA swabs from Appellant Brown, Co-Defendant Hughes, Co-Defendant Murphy and several other guests who were at the party at Rodeway Inn on January 3, 2015. (T. at 511-513). Deputy Dittrich submitted those DNA swabs to BCI for comparison to the swabs taken from J.J.'s person and J.J.'s clothing. *Id.*

{¶14} Lindsey Pruneski and Jennifer Colecchia, two (2) forensic scientists at BCI, analyzed and compared the various DNA swabs. (T. at 410-430; 440-483). Ms. Colecchia identified Appellant Brown as the source of both sperm and non-sperm DNA on J.J.'s shirt from January 3, 2015, with a reasonable degree of scientific certainty. (T. at 470-472). Ms. Colecchia also identified Co-Defendant Hughes as the source of sperm DNA recovered from J.J.'s vagina with a reasonable degree of scientific certainty. (T. at 459).

{¶15} Approximately one (1) week after the rape, Appellant Brown made contact with J.J. via Snapchat and asked J.J. if she had called the police. (T. at 243, 244). J.J. never responded to Appellant's message. (T. at 244).

{¶16} On August 11, 2015, a Richland County Grand Jury indicted Appellant Stanley D. Brown, Jr. on one count of Aiding or Abetting Rape, pursuant to R.C. §2907.02(A)(1)(C) and (A)(2), one count of Aiding or Abetting Rape, pursuant to R.C. §2923.03(A)(2), and one count of Kidnapping, pursuant to R.C. §2905.01(A)(4). All charges were first-degree felonies.

{¶17} Appellant entered pleas of not guilty to the charges.

{¶18} On April 12, 2016, the State filed a "Request for Hearing" with the trial court regarding the admissibility of certain evidence.

{¶19} On June 1, 2016, the trial court held an Oral Hearing on Admissibility of Evidence. During the hearing, Appellant argued that, pursuant to his right of confrontation, he should be allowed to present evidence regarding J.J. having a venereal disease and J.J. previously frequenting Rodeway Inn.

{¶20} Following the Oral Hearing on Admissibility of Evidence, the trial court excluded any evidence as to J.J. having a venereal disease or any previous visits to the Rodeway Inn pursuant to the "Rape Shield Law" under R.C. §2907.02(D).

{¶21} On June 2, 2016, Appellant's case proceeded to jury trial. During the jury trial, the State presented testimony from eight (8) witnesses, including J.J., and introduced thirty-one (31) exhibits, including Lab Reports confirming the presence of Appellant's sperm and non-sperm DNA on J.J.'s body.

{¶22} Appellant did not introduce any exhibits and only presented his own testimony.

{¶23} On June 7, 2016, the jury found Appellant guilty of Aiding or Abetting Rape pursuant to R.C. §2907.02(A)(1)(c) and not guilty on the remaining counts of the indictment.

{¶24} Following the verdict, the trial court scheduled a Sentencing Hearing for June 13, 2016.

{¶25} On June 13, 2016, the trial court sentenced Appellant to a seven (7) year prison term, imposed five (5) years of mandatory post-release control, and classified Appellant as a Tier III sex offender.

{¶26} On July 8, 2016, while represented by appellate counsel, Appellant filed a pro se "Motion for New Trial" with the trial court.

**{¶27}** On July 14, 2016, the State filed its "Response to Defendant's Motion for a New Trial" with the trial court.

**{¶28}** On July 22, 2016, the trial court overruled Appellant's "Motion for New Trial."

**{¶29}** Appellant now appeals.

## ASSIGNMENTS OF ERROR

**{¶30}** "I. THE TRIAL COURT'S RULING TO EXCLUDE PROBATIVE EVIDENCE PURSUANT TO OHIO'S RAPE SHIELD STATUTE R.C.2907(D) [SIC] VIOLATED BROWN'S SIXTH AMEMNDMENT [SIC] GURANTEE [SIC] TO REASNONABLE [SIC] CROSS-EXAMINATION.

**{¶31}** "II. THE JURY FINDING OF GUILTY OF AIDING AND ABETTING THE IMPAIRED CONSENT TYPE OF RAPE WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE AS A MATTER OF LAW."

### I.

**{¶32}** In his First Assignment of Error, Appellant argues that the trial court erred in excluding testimony pursuant to R.C. §2907.02. We disagree.

**{¶33}** Ohio's Rape Shield Law as codified in R.C. §2907.02(D) provides:

Evidence of specific instances of the victim's sexual activity, opinion evidence of the victim's sexual activity, and reputation evidence of the victim's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and

that its inflammatory or prejudicial nature does not outweigh its probative value.

**{¶34}** The "rape shield" law allows testimony on specific instances of a victim's "sexual activity" if the evidence is "material to a fact at issue in this case" and its probative value outweighs its inflammatory or prejudicial nature.

**{¶35}** Here, Appellant argues that he should have been allowed to present evidence that "J.J. has previously partied at this hotel." (Appellant's brief at 5).

**{¶36}** In determining whether "prior acts" evidence should be admitted, the court must balance the interests of the victim, which the statute is designed to protect, and the defendant's right to confront and cross-examine the State's witnesses. *State v. Williams* (1986), 21 Ohio St.3d 33, 35, 487 N.E.2d 560. If the evidence in question is merely being used to impeach the victim's credibility, it is not of probative value as to the alleged rape itself and should not be admitted. *Id.*

**{¶37}** Appellant does not argue that J.J. had previously engaged in sexual conduct with him or his co-defendants at the Rodeway Inn.

**{¶38}** Upon review, we find any evidence as to whether or not J.J. had previously attended parties at the Rodeway Inn had no probative value as to whether, on the night in question, Appellant aided and abetted in her rape or whether she was substantially impaired at the time.

**{¶39}** Based on the foregoing, we find Appellant's First Assignment of Error not well-taken and hereby overrule same.

**II.**

**{¶40}** In his Second Assignment of Error, Appellant argues his conviction for aiding and abetting rape was not supported by sufficient evidence. We disagree.

**{¶41}** A review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct determinations. *State v. Gulley* (Mar. 15, 2000), 9th Dist. No. 19600, at 3. "While the test for sufficiency requires a determination of whether the State has met its burden of production at trial, a manifest weight challenge questions whether the State has met its burden of persuasion." *State v. Thompkins* (1997), 78 Ohio St.3d 380, 390, 678 N.E.2d 541.

**{¶42}** In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, superseded by State constitutional amendment on other grounds in *State v. Smith* (1997), 80 Ohio St.3d 89, 684 N.E.2d 668.

**{¶43}** Specifically, an appellate court's function, when reviewing the sufficiency of the evidence to support a criminal conviction, is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks, supra*. This test raises a question of law and does not allow the court to weigh the evidence. *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Thompkins,* 78 Ohio St.3d at 386, 678 N.E.2d 541.

**{¶44}** "Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency." *State v. Roberts* (Sept. 17, 1997), 9th Dist. No. 96CA006462. Thus, a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency. *Cuyahoga Falls v. Scupholm* (Dec. 13, 2000), 9th Dist. Nos. 19734 and 19735, unreported.

**{¶45}** In the case *sub judice*, Appellant was convicted of Aiding and Abetting Rape, pursuant to R.C. §2923.03(A)(2) and R.C. §2907.02(A)(1)(c), which provide in relevant part:

**R.C. §2923.03 <u>Complicity</u>**

(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:

* * *

(2) Aid or abet another in committing the offense;

**R.C. §2907.02 <u>Rape</u>**

(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:

***

(c) The other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe

that the other person's ability to resist or consent is substantially impaired

because of a mental or physical condition or because of advanced age.

**{¶46}** "Sexual conduct" includes the act of cunnilingus, which has been described as "placing one's mouth on the female's genitals." R.C. §2907.01(A); *State v. Lynch*, 98 Ohio St.3d 514, 2003–Ohio–2284, 787 N.E.2d 1185, ¶ 86. As for the element of substantial impairment, this Court has repeatedly held that "sleep constitutes a mental or physical condition that substantially impairs a person from resisting or consenting to sexual conduct." *State v. Jones,* 8th Dist. Cuyahoga No. 98151, 2012–Ohio–5737, ¶ 30, citing *State v. Clark,* 8th Dist. Cuyahoga No. 90148, 2008–Ohio–3358, ¶ 21.

**{¶47}** Because "substantial impairment" is not defined in the Ohio Criminal Code, the Supreme Court of Ohio has found that "substantial impairment" can be established "by demonstrating a present reduction, diminution or decrease in the victim's ability, either to appraise the nature of his conduct or to control his conduct." *State v. Zeh,* 31 Ohio St.3d 99, 103–104 (1987); *State v. Brown,* 3d Dist. Marion No. 9–09–15, 2009–Ohio–5428, ¶ 21. Further, substantial impairment "does not have to be proven by expert medical testimony; rather, it can be shown to exist by the testimony of people who have interacted with the victim, and by allowing the trier of fact to do its own assessment of the person's ability to appraise or control his or her conduct." *State v. Brady,* 8th Dist. Cuyahoga No. 87854, 2007–Ohio–1453, ¶ 78; *Brown* at ¶ 21. Finally, a determination of substantial impairment is made "on a case-by-case basis, providing great deference to the fact-finder." *Brown* at ¶ 22.

**{¶48}** "Voluntary intoxication constitutes a 'mental or physical condition' that can cause substantial impartment under R.C. 2907.02(A)(1)(c)." *State v. Lasenby,* 3d Dist.

Allen No. 1–13–36, 2014–Ohio–1878, ¶ 28, citing *State v. Harmath,* 3d Dist. Seneca No. 13–06–20, 2007–Ohio–2993, ¶ 14.

**{¶49}** "The consumption of large amounts of alcohol in a short period of time is evidence that voluntary intoxication caused substantial impairment." *Id.,* citing *State v. Hatten,* 186 Ohio App.3d 286, 2010–Ohio–499, ¶ 22 (2d Dist.). It is also sufficient if the victim testifies that she is unable to remember the events of the incident to establish substantial impairment. *Id.,* citing *Harmath* at ¶ 19. "[S]tumbling, falling, slurred speech, passing out, [and] vomiting," are evidence that an intoxicated person is substantially impaired. *Hatten* at ¶ 24.

**{¶50}** At trial, the victim testified that she consumed whiskey and tequila, marijuana and psychedelic mushrooms at the Rodeway Inn. She testified that she participated in a drinking game with Appellant which involved alternating shots of Southern Comfort and Patron tequila. She further testified that she became so intoxicated that she lost consciousness. She testified that when she awoke, co-defendant Hughes was having vaginal intercourse with her and Appellant was sitting on the bed next to her, encouraging Hughes, telling her to relax and pushing her back down onto the bed when she tried to get up. (T. at 230-233).

**{¶51}** Additionally, the victim testified that Appellant attempted to force the victim to perform oral sex on him.

**{¶52}** The lab results from BCI identified Appellant as the source of both sperm and non-sperm DNA recovered from the victim's shirt.

**{¶53}** Based on the foregoing, we find that State presented sufficient evidence to support the aiding and abetting rape conviction.

{¶54} Appellant's Second Assignment of Error is overruled.

{¶55} Accordingly the judgment of the Court of Common Pleas of Richland County, Ohio, is affirmed.

By: Wise, John, J.

Delaney, P. J., and

Wise, Earle, J., concur.

JWW/d 0310