[Cite as *State v. Horn*, 2018-Ohio-779.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio                                    Court of Appeals No. WD-16-053

    Appellee                                Trial Court No. 2015CR0474

v.

Michael C. Horn                           **DECISION AND JUDGMENT**

    Appellant                               Decided:  March 2, 2018

* * * * *

Paul A. Dobson, Wood County Prosecuting Attorney, and
David T. Harold, Assistant Prosecuting Attorney, for appellee.

Neil S. McElroy, for appellant.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal from a judgment of the Wood County Court of Common

Pleas which, following a jury trial, found appellant guilty of six counts of rape with

sexually violent predator specifications.  For the reasons set forth below, this court

affirms the judgment of the trial court.

{¶ 2} Appellant, Michael C. Horn, was the 40 year old step-father and step-uncle to the two victims, S.M. and J.M., respectively, who were 13 to 14 years old at the times of the rapes.  S.M. and J.M. are first cousins.  On November 10, 2015, the Wood County prosecutor filed six bills of information against appellant: (Count 1) rape of S.M., in violation of R.C. 2907.02(A)(1)(c) and (B), a first degree felony, during time period 1; (Count 2) rape of S.M., in violation of R.C. 2907.02(A)(2) and (B), a first degree felony, during time period 1; (Count 3) rape of S.M., in violation of R.C. 2907.02(A)(1)(c) and (B), a first degree felony, during time period 2; (Count 4) rape of S.M., in violation of R.C. 2907.02(A)(2) and (B), a first degree felony, during time period 2; (Count 5) rape of J.M., in violation of R.C. 2907.02(A)(1)(c) and (B), a first degree felony, during time period 3; and (Count 6) rape of J.M., in violation of R.C. 2907.02(A)(2) and (B), a first degree felony, during time period 3.  Following the jury trial held March 7-10, 2016, appellant was convicted on all six counts.  The jury verdict judgment entry was journalized March 15, 2016.

{¶ 3} Each of the six counts also carried a sexually violent predator specification pursuant to R.C. 2941.148(A).  Following a bench trial held July 26, 2016, appellant was convicted on all six counts of the sexually violent predator specifications.  The sexually violent predator specification verdict judgment entry was journalized September 8, 2016.

{¶ 4} Subsequently on September 13, 2016, the trial court held the sentencing hearing.  Appellee stipulated to the merger of Count 2 into Count 1, Count 4 into Count 3, and Count 6 into Count 5.  For each of the Counts 1, 3 and 5, the trial court sentenced

2.

appellant to serve a prison term of ten years to life to be served consecutively. The trial court journalized the sentencing judgment entry on September 22, 2016 followed by a nunc pro tunc judgment entry on September 28, 2016.

{¶ 5} It is from the trial court's September 28, 2016, journalized judgment entry which appellant filed his appeal on October 17, 2016.

{¶ 6} Appellant sets forth five assignments of error:

I. The admission of other-acts testimony violated Mr. Horn's right to a fair trial, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, and Section 16, Article I of the Ohio Constitution.

II. Application of the rape-shield law resulted in a deprivation of Mr. Horn's constitutional rights to confront and cross-examine witnesses, his right to present a defense, and his right to a fair trial and due process of law, in violation of the U.S. Constitution's Fifth, Sixth, and Fourteenth Amendments and Article I, Sections 10 and 16 of the Ohio Constitution.

III. Mr. Horn's conviction under the Sexually Violent Predator specification is against the manifest weight of the evidence.

IV. The trial court abused its discretion when it permitted a counselor to testify regarding Asperger's syndrome in violation of Evid.R. 401, 402, and 403 resulting in violation of Mr. Horn's right to a fair trial, as

3.

guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, and Section 16, Article I of the Ohio Constitution.

V. Mr. Horn's convictions for violations of R.C. Sec. 2907.02(A)(1)(c) are not supported by legally sufficient evidence.

{¶ 7} Appellant's first, second and fourth assignments of error question the admissibility of evidence by the trial court and will be addressed together. We review a trial court's decision to admit or exclude evidence for abuse of discretion. *State v. Richardson*, 6th Dist. Lucas No. L-07-1214, 2010-Ohio-471, ¶ 66. Abuse of discretion connotes the record shows the trial court's decision was unreasonable, arbitrary or unconscionable. *Id.* The abuse of discretion must also create a material prejudice. *State v. Teal*, 6th Dist. Lucas Nos. L-15-1280, L-15-1281, 2017-Ohio-7202, ¶ 16.

{¶ 8} In order for the jury to find appellant guilty of rape in Counts 1, 3 and 5, appellee must prove beyond a reasonable doubt that appellant violated R.C. 2907.02(A)(1)(c), which provides:

> No person shall engage in sexual conduct with another who is not the spouse of the offender * * * when * * * (c) The other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age.

4.

{¶ 9} In order for the jury to find appellant guilty of rape in Counts 2, 4 and 6, appellee must prove beyond a reasonable doubt that: "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." R.C. 2907.02(A)(2).

{¶ 10} For any rape crime, the victim need not prove physical resistance to the offender. R.C. 2907.02(C).

{¶ 11} The lengthy jury instructions stipulated by the parties and read to the jury contained all of the relevant definitions associated with the elements of these crimes.

### Admissibility – "Other Acts" Evidence

{¶ 12} The focus of appellant's first assignment of error are Counts 1 through 4 for the rapes of S.M. Appellant argues Evid.R. 404(B) prohibits the introduction of "other acts" evidence of matters extrinsic to the operative facts of the underlying charges in order to prove the offenses alleged, and his due process rights were violated because these other acts were neither temporally related, nor circumstantially related, to the operative facts of the offenses alleged. Appellant argues S.M.'s testimony was not temporally related "regarding four other acts, some of which occurred at an unspecified time prior to the alleged incidents, and others that occurred six months after the charged offense in counts 1 and 2, and eight to nine months before the charged offense in counts 3 and 4." Appellant further argues S.M.'s testimony was not circumstantially related because "there was nothing so unusual or distinctive about spanking a bare bottom, offering to assist in shaving pubic hair, performing cunnilingus, or putting her hand on

5.

[appellant's] penis. And each of those instances was different from each other, and each was different from the two charged incidents."

{¶ 13} In response appellee argues the trial court did not abuse its discretion because uncharged sex crimes against the same victim by the same defendant are not subject to exclusion under Evid.R. 404(B) "for such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." In addition to identifying the perpetrator, the other acts testimony also showed appellant's grooming plan to create a trust relationship with S.M. to submit to his sexual conduct. Appellee argues the other acts testimony was admissible because it was more probative than any unfair prejudice to appellant.

{¶ 14} Evid.R. 404(B) states:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. In criminal cases, the proponent of evidence to be offered under this rule shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

{¶ 15} Evidence of other acts may be used to show appellant is the actual individual who committed those offenses to establish a behavioral fingerprint to identify

him as the perpetrator through the characteristics of the acts rather than through his character traits. *Richardson*, 6th Dist. Lucas No. L-07-1214, 2010-Ohio-471, at ¶ 69. The other acts evidence must also be temporally and circumstantially related to the operative facts of the charged offense. *Id.* at ¶ 70.

{¶ 16} Consideration of other acts evidence is a three-step analysis: (1) pursuant to Evid.R. 401 whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence; (2) whether the other acts evidence is presented solely to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose; and (3) pursuant to Evid.R. 403 whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice. *Teal*, 6th Dist. Lucas Nos. L-15-1280, L-15-1281, 2017-Ohio-7202, ¶ 18.

{¶ 17} The operative facts of the charged offenses begins our analysis. The record shows the first two rape convictions (Counts 1 and 2) involved digital penetration of S.M.'s vagina and stimulating her clitoris while she was asleep, when she was a ninth grader. The third and fourth rape convictions (Counts 3 and 4), also when S.M. was a ninth grader, involved digital penetration of her vagina and stimulating her clitoris followed by the insertion and use of sex toys in her vagina and anus while awake. In each instance S.M. was alone with the appellant at the home they shared and in a situation where she felt helpless and could not stop the rape. After each rape S.M. felt

7.

ashamed and isolated from her family, friends and teachers because "no one believed" her, and no one stopped appellant, even when she did tell adults. S.M. came to fear appellant. S.M.'s mother testified she observed appellant yell at S.M., and on one occasion it was "beyond normal dad behavior."

{¶ 18} The record also shows testimony regarding the following other acts evidence was discussed by S.M. and corroborated by one or more other witnesses.

{¶ 19} At trial S.M. testified to three separate events while an eighth grader: 1) appellant ordered her to drop her pants and panties and spanked her bare bottom and demanded she count the spanks and thank him for them; 2) appellant offered to shave her pubic hair; and 3) appellant gave her a birds-and-bees talk that involved appellant using his personal copy of the "Kama Sutra," which she described as "the Indian book on sex positions" with graphic pictures.

{¶ 20} At trial S.M. testified to two separate events while a ninth grader: 1) appellant ordered her to drop her pants and panties and he examined her vagina and clitoris with his tongue and fingers to make sure she's "not ripped up" and then examined her anus with his finger covered in Vaseline; and 2) while appellant wore boxer shorts and had a partial erection, he grabbed her hand to put it over his penis to demonstrate "he was too big for me and that if he would have raped me, it would have tore me up."

{¶ 21} Grooming is the process by which appellant took deliberate actions to expose S.M. to sexual material and to sexual behaviors to prepare S.M. for sexual activity. *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 21.

8.

The other acts testimony appeared to describe aspects of appellant's grooming process conditioning S.M. to submit to appellant's sexual behaviors that occurred while she was an eighth and ninth grader.

{¶ 22} The first step of other acts evidence analysis is pursuant to Evid.R. 401. Relevant evidence is generally admissible, while irrelevant evidence is inadmissible. Evid.R. 402. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. We find the other acts evidence about the grooming process was relevant that the rapes stated in Counts 1 through 4 were more probable than they would be without the evidence.

{¶ 23} The second step of other acts evidence analysis is pursuant to Evid.R. 404(B). We find the other acts evidence was presented for legitimate purposes other than solely about appellant's character, such as specifically identifying appellant as the perpetrator of the rapes in the absence of mistake or accident and to identify his plan or scheme or motive or intent to target the teenagers in the family and condition them to submit to his sexual conduct. Evid.R. 404(B) did not prohibit the introduction of such other acts evidence for those legitimate purposes.

{¶ 24} The third step of other acts evidence analysis is pursuant to Evid.R. 403, which states:

9.

Exclusion mandatory. Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.

Evid.R. 403(A). We find the probative value of the relevant other acts evidence substantially outweighed any danger of unfair prejudice. We do not find the other acts evidence resulted in material prejudice against appellant. The other acts evidence helped appellee to prove appellant's identity, motive, opportunity, preparation, and plan. The record does not indicate the jury was confused or misled by such other acts evidence.

{¶ 25} We find the trial court did not act unreasonably, arbitrarily or unconscionably and did not abuse its discretion regarding the admissibility of other acts evidence. Appellant's first assignment of error is not well-taken.

## Admissibility – "Rape Shield" Evidence

{¶ 26} Appellant next argues Ohio's rape-shield law must yield to his Sixth Amendment right to confront the witnesses against him. The focus of appellant's second assignment of error are, again, Counts 1 through 4 for the rapes of S.M. Appellant argues he should have been able to introduce evidence of S.M.'s sexual activity with her teenage boyfriend to show that she had a reason to fabricate the allegations against appellant. Appellant argues S.M's reason to fabricate was in response to her mother and appellant forbidding S.M. from seeing her boyfriend. S.M.'s parents were divorced and shared custody of her. Appellant argues S.M. wanted to move in full-time with her biological father for his "relaxed" parenting standards.

10.

{¶ 27} In response appellee argues the trial court did not abuse its discretion because the purpose and spirit of the rape shield law is intended for precisely the facts in this case.

{¶ 28} Ohio's rape shield law states in part as follows:

Evidence of specific instances of the victim's sexual activity, opinion evidence of the victim's sexual activity, and reputation evidence of the victim's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value.

R.C. 2907.02(D).

{¶ 29} We find the record shows appellant did not seek to introduce evidence of specific instances of S.M.'s sexual activity, opinion evidence of S.M.'s sexual activity, or reputation evidence of S.M.'s sexual activity for any allowable reason. Appellant did not seek to introduce evidence of the origin of semen, pregnancy, or disease, or S.M.'s past sexual activity with appellant, which are the limited allowances by statute. Appellant sought to attack S.M.'s credibility by providing a reason to fabricate the allegations against appellant. "Evidence of sexual activity offered merely to impeach the credibility of the witness is not material to a fact at issue in the case and must be excluded." *State v.*

*Ector*, 6th Dist. Lucas No. L-07-1169, 2009-Ohio-515, ¶ 21. The record shows the jury heard testimony from eight witnesses other than S.M., including forensic DNA evidence and expert testimony regarding the alleged sex toys used in Counts 3 and 4. The jury, as the trier of the facts, determined credibility of all the evidence, including the nine witness testimonies. *State v. Spaulding*, 151 Ohio St.3d 378, 2016-Ohio-8126, 89 N.E.3d 554, ¶ 165.

{¶ 30} We find the record confirms the jury heard appellant cross-examine S.M. about her motives to fabricate her rape claims against appellant, including references to S.M.'s boyfriend, and S.M. answered each question. Perhaps S.M.'s answers did not support appellant's defense theory, but the application of the rape shield law did not deprive appellant of material evidence to a fact at issue nor deny testimony that was more probative than prejudicial. *State v. Coffey*, 6th Dist. Lucas No. L-12-1047, 2013-Ohio-3555, ¶ 24. We find the fact that appellant confronted S.M. through appropriate, meaningful cross-examination confirmed there was no violation of the Confrontation Clause. *State v. Craig*, 110 Ohio St.3d 306, 2006-Ohio-4571, 853 N.E.2d 621, ¶ 81. Appellant's opportunities during cross-examination to expose S.M.'s motives to fabricate her claims did not raise Sixth Amendment concerns. *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 172.

{¶ 31} Nor did the application of the rape shield law deprive appellant of the meaningful cross-examination of S.M. and her biological parents regarding the alleged motive of "relaxed" parenting standards. S.M. testified that in contrast to her step-father

12.

"my dad, he gives me – at some point he gives me a chance to express my opinion, tell him yes or no, and he'll actually listen to me." S.M.'s dad testified S.M. "was pretty honest with me because I always kind of had a really good relationship with that." S.M.'s mom testified she can think of nothing that would motivate both S.M. and J.M. to fabricate the rape allegations against appellant.

{¶ 32} We find the trial court did not act unreasonably, arbitrarily or unconscionably and did not abuse its discretion regarding the inadmissibility of evidence under the rape shield law. Appellant's second assignment of error is not well-taken.

### Admissibility – "Asperger's Syndrome" Evidence

{¶ 33} Appellant next argues the trial court abused its discretion by admitting irrelevant testimony from J.M.'s school counselor about Asperger's syndrome "for no purpose other than to unfairly prejudice the defendant and mislead the jury." Appellant argues "there was no other evidence that the victim of counts 5 and 6 [J.M.] was suffering any substantial impairment because of a mental or physical condition." As a result, appellant argues he did not receive a fair trial.

{¶ 34} In response appellee argues the trial court did not abuse its discretion because the school counselor's testimony was from her personal experience with her own foster children diagnosed with Asperger's syndrome, which was relevant evidence under Evid.R. 401. Appellee further argues the school counselor's testimony was not unduly prejudicial to appellant because she had personally met with J.M. and had personal

13.

experience with and training in counseling students involved with sexual and physical abuse. Appellee never sought the school counselor to be classified as an expert witness.

{¶ 35} Contrary to appellant's assertion, there was relevant evidence that J.M. suffered from a mental condition other than Asperger's syndrome. The record shows that J.M.'s mom testified J.M. was diagnosed at age three with ADHD and took the same medications as appellant. It was appellant who explained to J.M.'s mom (his sister-in-law) what effect the medicines had. There was also testimony from J.M. describing her physics class in high school as, "Isn't physics, like, gym or something?" The testimony J.M. provided, both on direct and cross-examination, was sufficient to show that a rational jury could reach its own conclusions as to J.M.'s mental condition referred to by multiple witnesses as "low functioning" and whether that condition rendered her "substantially impaired."

{¶ 36} "Substantial impairment" is "a present reduction, diminution or decrease in the victim's ability, either to appraise the nature of his conduct or to control his conduct." *State v. Zeh*, 31 Ohio St.3d 99, 103-104, 509 N.E.2d 414 (1987). "Substantial impairment does not have to be proven by expert medical testimony; rather, it can be shown to exist by the testimony of people who have interacted with the victim, and by allowing the trier of fact to do its own assessment of the person's ability to appraise or control his or her conduct." *State v. Brady*, 8th Dist. Cuyahoga No. 87854, 2007-Ohio-1453, ¶ 78; *State v. Acosta*, 6th Dist. Lucas No. L-09-1120, 2010-Ohio-5166, ¶ 22. The

14.

determination of substantial impairment is made on a case-by-case basis with "great deference" to the trier of fact. *State v. Brown*, 5th Dist. Richland No. 2016 CA 0043, 2017-Ohio-1114, ¶ 47.

{¶ 37} J.M.'s school counselor testified she received specialized training as a "counselor to identify the telltale signs of sexual abuse or physical abuse" in addition to "extensive training" due to being a therapeutic foster parent to special needs children for 20 years. Some of her special needs foster children had Asperger's syndrome, which she described as a disorder where the person is socially awkward and does not know how to evaluate a social situation. The school counselor did not provide an opinion about J.M. and Asperger's syndrome. The school counselor testified a teacher referred J.M. to her because the teacher was concerned with J.M.'s grades dropping, poor hygiene, and her transformation into a withdrawn and untalkative girl. J.M. eventually told the school counselor about appellant forcing her to perform fellatio and "family members that were angry that didn't want her to tell." The school counselor testified after J.M.'s disclosure she did not see improvement in her grades, hygiene or stress "because this was an ongoing situation * * * there wasn't a resolution for her to have an end to it."

{¶ 38} We find the trial court did not act unreasonably, arbitrarily or unconscionably and did not abuse its discretion regarding the admissibility of J.M.'s school counselor testimony. Appellant's fourth assignment of error is not well-taken.

15.

**Manifest Weight**

{¶ 39} In support of his third assignment of error, appellant argues appellee failed to meet its burden of proving beyond a reasonable doubt that appellant is a sexually violent predator. Appellant argues the expert testimony was inconclusive for determining recidivism with any certainty and at best was "very low."

{¶ 40} In response appellee argues appellant argues there was no miscarriage of justice by the trial court, and the trial court's determination of the weight and credibility of the evidence must be accorded due deference.

{¶ 41} "A challenge to the weight of the evidence questions whether the greater amount of credible evidence was admitted to support the judgment than not." *Flowers v. Siefer*, 6th Dist. Lucas No. L-16-1002, 2017-Ohio-1310, ¶ 94. This court has repeatedly stated that in determining whether a verdict is against the manifest weight of the evidence, we review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way to create such a manifest miscarriage of justice as to require a new trial. *State v. Reynolds*, 6th Dist. Lucas No. L-16-1021, 2017-Ohio-1478, ¶ 47. A conviction will be overturned only in exceptional cases. *Id.* Every "reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts." *Flowers* at ¶ 94.

{¶ 42} It is well established that the trier of fact has the sole duty to decide what weight should be given to the testimony of any witness, including experts. *Kokitka v.*

*Ford Motor Co.*, 73 Ohio St.3d 89, 92, 652 N.E.2d 671 (1995); *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. We will not reverse those decisions absent an abuse of discretion where the record shows the decision was unreasonable, arbitrary or unconscionable. *Flowers* at ¶ 59; *Kinn v. HCR ManorCare*, 2013-Ohio-4086, 998 N.E.2d 852, ¶ 14 (6th Dist.). The trier of fact heard the testimony, viewed witness demeanor, gestures and voice inflections and ultimately resolved any conflicting evidence presented at the trial. *State v. Schwamberger*, 6th Dist. Lucas No. L-13-1236, 2014-Ohio-4733, ¶ 21. A "conviction is not against the manifest weight of the evidence simply because the fact finder believed the prosecution testimony." *Id.*

{¶ 43} Pursuant to R.C. 2971.02, appellant elected to have the trial court, instead of a jury, determine the sexually violent predator specifications following his jury convictions on the underlying rape charges.

{¶ 44} A "sexually violent predator" is defined as "a person who, on or after January 1, 1997, commits a sexually violent offense and is likely to engage in the future in one or more sexually violent offenses." R.C. 2971.01(H)(1). A "sexually violent offense" is essentially defined as "a violent sex offense." R.C. 2971.01(G)(1). A "violent sex offense" is defined, in part, as a "violation of section 2907.02 * * * of the Revised Code." R.C. 2971.01(L)(1).

{¶ 45} Appellant's convictions for offenses pursuant to R.C. 2907.02(A)(1)(2) and 2907.02(A)(2) are by definition "sexually violent offenses." Appellant's offenses occurred after January 1, 1997. The remaining issue for the trier of fact was the

17.

determination if appellant "is likely to engage in the future in one or more sexually violent offenses." That determination must be proven by appellee beyond a reasonable doubt. *State v. Williams*, 88 Ohio St.3d 513, 532, 728 N.E.2d 342 (2000).

{¶ 46} The trial court, as the trier of fact, is presumed to have considered "only the relevant, material, and competent evidence" in arriving at its sexually violent predator judgments unless it affirmatively appears to the contrary. *State v. Arnold*, 147 Ohio St.3d 138, 2016-Ohio-1595, 62 N.E.3d 153, ¶ 39. Here there is no showing the presumption should not apply.

{¶ 47} According to the plain language of the statute, the General Assembly offers six factors to the trier of fact it "may" consider "as evidence tending to indicate that there is a likelihood that a person will engage in the future in one or more sexually violent offenses." R.C. 2971.01(H)(2)(a)-(f). Significantly, there is a broad catch-all factor of "any other relevant evidence." R.C. 2971.01(H)(2)(f). While a trier of fact is not required to consider any of those six factors, some appellate jurisdictions have concluded that consideration of any one is appropriate. *State v. Sopko*, 8th Dist. Cuyahoga No. 90743, 2009-Ohio-140, ¶ 48; *State v. Person*, 9th Dist. Summit No. 27600, 2016-Ohio-681, ¶ 24; *State v. T.E.H.*, 10th Dist. Franklin Nos. 16AP-384, 16AP-385, 16AP-386, 2017-Ohio-4140, ¶ 72; *State v. Cartwright*, 12th Dist. Preble No. CA2012-03-003, 2013-Ohio-2156, ¶ 27. We agree.

{¶ 48} The transcript of the sexually violent predator bench trial, and the trial court's subsequent journal entry, each confirm the trial court considered all of the

18.

evidence and also specifically considered the R.C. 2971.01(H)(2)(c) and (f) factors when it determined appellee had proven beyond a reasonable doubt that appellant is guilty of the sexually violent predator specifications. Competing expert testimony and reports were among the record of evidence. The record also shows that despite his convictions, the expert witnesses testified that appellant denied his culpability and lacked remorse for the rapes against S.M. and J.M.

{¶ 49} The trial court ultimately reached its verdict and stated in the judgment entry journalized September 8, 2016:

Specifically, the Court finds the facts of the current offenses – that Defendant committed multiple sexually violent offenses over a period of sixteen months, with two juvenile victims around the age of fourteen, both with a familial relationship to the Defendant – demonstrate Defendant is likely to engage in the future one or more sexually violent offenses.

{¶ 50} We reviewed the entire record in this case and do not find the trial court lost its way or created a manifest miscarriage of justice in determining appellant's guilt beyond a reasonable doubt for each sexually violent predator specification. We will not disturb the trial court's findings.

{¶ 51} Appellant's fourth assignment of error is not well-taken.

**Sufficiency of Evidence**

{¶ 52} In support of his fifth assignment of error, appellant argues appellee failed to produce legally sufficient evidence to support the convictions. Appellant argues there

19.

was insufficient evidence that S.M. (in Counts 1 and 3) and J.M. (in Count 5) were substantially impaired by a physical or mental condition pursuant to R.C. 2907.02(A)(1)(c). For Count 1, appellant argues that sleep is not uniformly recognized by the district courts as a substantial impairment, as the cases appear to "involve the abuse or overuse of drugs and or alcohol." For Counts 3 and 5, appellant urges this court to determine the evidence was insufficient to conclude the victims were impaired to the requisite "substantial" degree.

{¶ 53} In response appellee argues there were three avenues of legally sufficient evidence regarding substantial impairments of the victims and known by appellant: "In one instance, the victim was asleep during the rape. In another rape, the victim was low functioning. In another rape, the disparity of power in the familial relationship caused the substantial impairment." No expert testimony was required. Appellee argues the jury was the trier of fact and rationally determined, after viewing the evidence in a light most favorable to the prosecution, the essential elements of the crimes were proven beyond a reasonable doubt.

{¶ 54} Our role in reviewing a challenge to the sufficiency of the evidence is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt. *State v. Beasley*, 2018-Ohio-493, ¶ 207 (slip opinion). It asks whether the evidence was legally sufficient to support the guilty verdict as a matter of law, irrespective of evaluating witness credibility. *Id.* "This standard is very narrow and tests

20.

only whether there was evidence presented which supports each element of the prima facie case." *Flowers*, 6th Dist. Lucas No. L-16-1002, 2017-Ohio-1310, at ¶ 83.

{¶ 55} The prima facie case for Counts 1, 3 and 5 pursuant to R.C. 2907.02(A)(1)(c) are: (1) sexual conduct, (2) with one not the offender's spouse, (3) when the other person's ability to resist or consent is substantially impaired by a mental or physical condition, and (4) the offender knows or has reasonable cause to believe the other person is substantially impaired by such condition. *In re J.J.*, 6th Dist. Erie No. E-11-018, 2012-Ohio-2550, ¶ 21.

{¶ 56} With respect to Count 1, the record evidence shows S.M. testified she was asleep, her body relaxed, following appellant's massaging of her upper body around bed time, and when she awoke appellant's fingers were inside her vagina.

Q: When you were asleep, were you able to resist or consent with what Mike was doing to you?

A: No.

Q: Again, that was why?

* * *

A: Because I was asleep at that point.

{¶ 57} Contrary to appellant's assertions, this court has addressed the issue of sleep as a "substantial impairment." "A jury can reasonably conclude that the defendant knew the victim was substantially impaired and unable to object to the defendant's conduct if there was evidence that the victim was in a state of deep sleep or drunkenness.

*State v. Anderson*, 6th Dist. Wood No. WD-04-035, 2005-Ohio-534, ¶ 41.  Here, there was evidence S.M. was asleep at the time of the rape.

{¶ 58} The record includes evidence from which the jury can reach its own determination as to S.M.'s ability to resist or consent and being substantially impaired because of a mental or physical condition of which appellant knew or should have known.  Using the test of sufficiency, we find any rational trier of fact could have found evidence supporting the four essential elements of the violation of R.C. 2907.02(A)(1)(c) for Count 1 beyond a reasonable doubt.

{¶ 59} With respect to Count 3, the record evidence shows S.M. repeatedly testified how she felt helpless to stop the rape by her step-father.  While Count 3 was occurring, S.M. was afraid of appellant's temper and was resigned to the helplessness of a child who expected no adult would believe her about what her step-father did to her.  S.M.'s testimony included statements such as, "I felt if I didn't do [what he commanded], he was going to do it anyways," and "[my step-father] gets these very stern looks on is face every time that you challenge him.  When he has that look, it does not go well. * * * If I would disobey him, he would definitely start yelling [and I'd be afraid he would hurt me or my mother]."  S.M. further testified, "I figured nobody would end up believing me. And if I told my mom she would have ended up asking him about it, he would have denied it, and she wouldn't believe me."  Upon further questioning, S.M. explained how she coped.

22.

Q: What was going through your head as all of this was happening [the Count 3 and 4 rapes]?

A: I tried to block everything that was going on out of my head.

Q: How did you manage that?

A: I ended up just staring off to the side.

Q: Did you find something to look at?

A: I ended up looking at my mother's jewelry box.

{¶ 60} The record includes evidence from which the jury can reach its own determination as to S.M.'s ability to resist or consent being substantially impaired because of a mental or physical condition of which appellant knew or should have known. Using the test of sufficiency, we find any rational trier of fact could have found evidence supporting the four essential elements of the violation of R.C. 2907.02(A)(1)(c) for Count 3 beyond a reasonable doubt.

{¶ 61} With respect to Count 5, the record evidence shows J.M. testified that "Uncle Mike" also gave her a birds-and-bees talk when she was either 13 or 14 years old and showed her a video using his computer with "people doing anal sex." J.M. was uncomfortable having appellant give her that talk rather than her mother. Then soon after J.M. turned 14 years old, she was at appellant's house to spend the night, which was a frequent, necessary occurrence due to transportation arrangements for her to get to school. That night she was not yet asleep, and appellant came to her room. He told her to come with him to another bedroom where they were alone. He removed his boxer

23.

shorts and guided her mouth to his penis for fellatio. She felt she had no choice but to obey appellant "because he was family." Many witnesses described J.M. as "low functioning." J.M. testified she was scared and tried to cope with the situation by "shutting down."

> Q: What was going through your head when that happened?
>
> A: At that time my brain was starting to shut down as I was getting scared and creeped out. * * * I was really scared, and I really didn't know what to do.

{¶ 62} The record includes evidence from which the jury can reach its own determination as to J.M.'s ability to resist or consent being substantially impaired because of a mental or physical condition of which appellant knew or should have known. Using the test of sufficiency, we find any rational trier of fact could have found evidence supporting the four essential elements of the violation of R.C. 2907.02(A)(1)(c) for Count 5 beyond a reasonable doubt.

{¶ 63} Appellant's fifth assignment of error is not well-taken.

{¶ 64} On consideration whereof, we find that substantial justice has been done in this matter and the judgment of the trial court to be lawful. The judgment of the Wood County Court of Common Pleas is affirmed. Appellant is ordered to pay costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

24.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Mark L. Pietrykowski, J.           _____
                                              JUDGE
Arlene Singer, J.

                                   _____
Thomas J. Osowik, J.                          JUDGE
CONCUR.

                                   _____
                                              JUDGE