[Cite as *State v. Browder*, 2014-Ohio-113.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 99727**

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## MICHAEL BROWDER

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-564350

**BEFORE:** S. Gallagher, P.J., Kilbane, J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** January 16, 2014

**ATTORNEY FOR APPELLANT**

Thomas A. Rein
Leader Building, Suite 940
526 Superior Avenue East
Cleveland, OH   44114


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
By: Kristin Karkutt
Assistant Prosecuting Attorney
Justice Center - 9th Floor
1200 Ontario Street
Cleveland, OH   44113

SEAN C. GALLAGHER, P.J.:

**{¶1}** Defendant Michael Browder appeals his conviction, following a jury trial, in which he was found guilty of rape and kidnapping and sentenced to 11 years of imprisonment. For the following reasons, we affirm Browder's conviction.

**{¶2}** In June 2012, the victim, C.C., 16 years old at the time, was on her way home when she encountered Browder. Several witnesses, including C.C.'s family, the responding EMS and police personnel, and C.C.'s school counselors established evidence that C.C. is cognitively challenged. One responding officer went so far as treating C.C. as if she were much younger than an average 16-year-old, and another officer made a similar assessment after a brief two-minute conversation. The responding emergency personnel stated that brief conversations with C.C. revealed several indications of her cognitive disabilities. C.C.'s school counselors confirmed that C.C. was developmentally behind her contemporaries, and C.C.'s family members indicated that C.C. better related to much younger children.

**{¶3}** On the day of the incident, C.C. and her younger cousin T.H. visited their local swimming pool. C.C. left the pool to go home earlier than T.H., who normally looked after C.C. despite being the younger of the two. When T.H. finally went home, she realized that C.C. never arrived, and the family began a frenzied search. Hours later, C.C. called her aunt, frantically describing her location and situation. According to C.C., on her way home from the pool, Browder, who was 57 years old at the time, walked off his porch and directed C.C. to approach him. Browder grabbed C.C.'s arm and pulled

her into the house, saying that she looked like a nice girl. Browder offered a beer, which C.C. declined. C.C. was scared and felt as if Browder would hurt her.

{¶4} At this point in the narrative, C.C. told Browder she wanted to leave because her family would be worried. Browder responded that she would need a taxi or an umbrella because it was raining and invited C.C. to follow him to get his umbrella so she could walk home. C.C. reluctantly complied, but did not know what to do at the time. Once upstairs, Browder told her to sit down on the couch right next to him. He then offered her $20 "to do something with him." C.C. did not understand the request and rejected the money. Browder persisted and placed the $20 bill into C.C.'s swimming suit. C.C. immediately removed the money. Browder took C.C. into his bedroom, took off his clothes, and told her to remove hers.

{¶5} C.C. testified in detail, although through mostly childish vernacular, that Browder proceeded to rape her, including, as pertinent to this appeal, a period of time in which he forced acts of oral sex. C.C. stated that she screamed for help because of the pain and fear, but Browder continued. At one point, Browder was interrupted by a knock on the door, but C.C. was unable to escape.

{¶6} After a period of time, C.C. was finally able to call her family on her cell phone after Browder allowed her to plug it into a wall socket. Up to that point, her cell phone's battery was depleted, and she was unable to use it. Browder gave C.C. his address and telephone number, and C.C. relayed the information to her family. C.C. ran

out of the house and was reunited with her family. Shortly thereafter, she was taken to the hospital and treated.

{¶7} Several of C.C.'s family, arriving at Browder's home to help, attacked Browder after finding C.C. Browder called 911 for his own protection. When the police officers arrived, Browder complained of injuries and sought treatment. Browder told the responding officers that C.C. was a prostitute, and the state recovered Browder's DNA from C.C.'s face, neck, and chest.

{¶8} Unrelated to the immediate events of this case, a neighbor, K.S., testified to an earlier encounter with Browder. K.S. was returning from her friend's house early in the morning of C.C.'s attack. When she was walking by Browder's home, Browder stepped off the porch and grabbed K.S. by the arm. K.S., however, was 44 years old and able to jerk herself free. She told him to let go and quickly walked to her nearby home. After seeing the commotion later in the day, she approached the investigating officers to report the earlier altercation.

{¶9} At trial, Browder presented two witnesses, his brother and another neighbor. Both witnesses observed Browder together with C.C., but neither had any direct communication or interaction with C.C. The neighbor, from her front porch, saw the incident with K.S. earlier in the morning, but saw nothing out of the ordinary and thought the two were just talking. She also saw C.C. approach Browder after being called by him, but again, did not think any nefarious events were unfolding. Likewise, Browder's

brother visited and saw C.C. sitting on a chair in the house. He testified that she seemed natural and was not acting strange.

{¶10} Browder was charged with three counts of rape in violation of R.C. 2907.02(A)(1)(c) (based on digital penetration, cunnilingus, and fellatio, respectively), one count of rape in violation of R.C. 2907.02(A)(2), one count of gross sexual imposition in violation of R.C. 2907.05(A)(1), and one count of kidnapping in violation of R.C. 2901.01(A)(4) with a sexual motivation specification. The jury found Browder guilty of one count of rape, Count 3 involving fellatio, and kidnapping with the sexual motivation specification. The offenses were merged for the purposes of sentencing. All the other counts either were dismissed or a not guilty verdict was rendered. The trial court sentenced Browder to 11 years of incarceration on the rape count, with five years of mandatory postrelease control.

{¶11} Browder appealed his conviction, raising two assignments of error, in which he claims the trial court erred in denying Browder's motion for acquittal because the state failed to present sufficient evidence to sustain the conviction, or in the alternative, his conviction is against the manifest weight of the evidence. For the following reasons, we find no merit to Browder's claims.

{¶12} In reviewing a claim of insufficient evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph

two of the syllabus. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact. *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37.

{¶13} Browder was convicted of one count of rape in violation of R.C. 2907.02(A)(1)(c) and kidnapping in violation of R.C. 2905.01(A)(4). The two statutes, in pertinent part and respectively, provide as follows:

> (A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
>
> * * *
>
> (c) The other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age;

and

> [n]o person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, * * * [t]o engage in sexual activity * * * against the victim's will.

{¶14} Browder claims there was no evidence that he, by force, threat, or deception, removed C.C. from another place or restrained her liberty in any fashion, and therefore, according to him, there was insufficient evidence to support the kidnapping charge. Browder ignores C.C.'s testimony that he grabbed her arm, pulled her into the house, or lured her into his bedroom by promising an umbrella and kept her in the bedroom despite

her attempted escape. C.C. further testified to multiple unwanted acts of sexual contact, at times screaming for help and for Browder to stop. Only one of those incidents was necessary to demonstrate that Browder restrained her liberty for the purposes of engaging in sexual activity against C.C.'s will.

{¶15} Even if we ignored the "deception" aspect of kidnapping demonstrated by the offers of alcohol or search for the umbrella, as Browder implicitly asks, "force" is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A). Browder focuses on the violence aspect of "force" at the exclusion of compulsion or other physical constraint and claims force cannot be established because Browder never overtly "threatened" C.C.

{¶16} As this court continuously maintains, "force need not be overt and physically brutal to accomplish its objective. The force and violence necessary under the code depends upon the age, size and strength of the parties and their relationship to each other." *State v. Sullivan*, 8th Dist. Cuyahoga No. 63818, 1993 Ohio App. LEXIS 4859, *10 (Oct. 7, 1993), citing *State v. Eskridge*, 38 Ohio St.3d 56, 526 N.E.2d 304 (1988). Browder's specious argument that he never overtly threatened C.C., and therefore never exerted force is overruled. There is sufficient evidence to support Browder's kidnapping conviction based on C.C.'s testimony that Browder grabbed her by the arm, pulled her from the street, lured her to the interior of his home with beer or an offer of an umbrella, and then engaged in sexual activity with C.C. against her will.

{¶17} With regard to his rape conviction, Browder claims the state failed to present evidence that C.C.'s ability to consent or resist was substantially impaired and that Browder was aware of her substantial impairment. The phrase "substantially impaired," however, is not defined in the Ohio Revised Code. In *State v. Zeh*, 31 Ohio St.3d 99, 103, 509 N.E.2d 414 (1987), the Ohio Supreme Court held that it "must be given the meaning generally understood in common usage." It is sufficient for the state to establish substantial impairment by establishing a reduction or decrease in the victim's ability to act or think. *Id.* at 103-104. "Substantial impairment does not have to be proven by expert medical testimony; rather, it can be shown to exist by the testimony of people who have interacted with the victim * * *." *State v. Brady*, 8th Dist. Cuyahoga No. 87854, 2007-Ohio-1453, ¶ 78. Further, the trier of fact can reasonably infer from a combination of their observation of the victim's demeanor and the defendant's or other witnesses' interactions with the victim to determine whether a defendant knew or had reasonable cause to believe that the victim was impaired. *State v. Novak*, 11th Dist. Lake No. 2003-L-077, 2005-Ohio-563, ¶ 25.

{¶18} The state presented several witnesses who observed within minutes of conversing with her that C.C. had some form of mental impairment or other cognitive disabilities. A few of those witnesses were the emergency responders attending to C.C. immediately after the alleged rape occurred. C.C.'s school psychologist testified to C.C.'s learning deficiencies, her inability to express herself when something is wrong, and her inability to understand the nature of her own limitations. C.C.'s family further

testified that her maturity level more aptly compared to a much younger cohort than generally associated with an average 16-year-old. C.C.'s childish testimony supported these observations. The state therefore presented sufficient evidence that Browder had reasonable cause to believe that C.C.'s ability to resist or consent was substantially impaired by her cognitive deficiencies. Most important, since the trier of fact had the opportunity to observe C.C. testify, the jury was in the best position to determine whether Browder knew or should have known that C.C.'s ability to resist or consent was substantially impaired through that cognitive disability.

**{¶19}** Although Browder also claims the state failed to establish that C.C. was mentally retarded, in so arguing, he misconstrues the extent of the state's burden to establish substantial impairment. It is sufficient for the state to establish substantial impairment by establishing a reduction or decrease in the victim's ability to act or think. *Zeh* at 103-104. The state is not burdened with establishing mental retardation or some form of psychological disease to establish substantial impairment. The state amply met its burden through an overwhelming number of witnesses describing C.C.'s cognitive deficiencies and the conspicuous nature of C.C.'s limitations. Browder's first assignment of error is overruled.

**{¶20}** Finally, in considering a claim challenging the manifest weight of the evidence, the court, reviewing the entire record, must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a

manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. Reversing a conviction as being against the manifest weight of the evidence should be reserved for only the exceptional case in which the evidence weighs heavily against the conviction. *Id*. Moreover, a claim that a jury verdict is against the manifest weight of the evidence involves a separate and distinct test that is much broader than the test for sufficiency. *State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, ¶ 193. Therefore, they should properly be separately addressed when raised on appeal.

{¶21} Browder claims the police failed to conduct an investigation into the allegations and that C.C.'s testimony should be discredited because it is not corroborated by tangible evidence.[1] Browder told the investigating police officers that C.C. was a prostitute. His sole argument is essentially that no rape or kidnapping occurred because the victim had "no cuts, bruises, or physical injuries" or any other evidence corroborating C.C.'s testimony to demonstrate a sexual assault occurred. Browder's arguments are decidedly without merit.

{¶22} After reviewing the record, there is no objective reason, nor any provided by Browder, to discount C.C.'s or any other witnesses' credibility to the point of determining that the jury clearly lost its way and created such a manifest miscarriage of justice as to

---

[1]Browder is not clear on how the police failed to conduct an investigation. Browder's argument summarily claims, without any citation to the record or any specificity, that the investigation was flawed. *See* App.R. 16(A)(7). Browder admitted to sexual relations taking place and simply claimed to the emergency responders that C.C. was a prostitute. The only issues for trial focused on C.C.'s lack of consent, cognitive abilities, and force, all of which were fully developed at trial.

warrant reversing Browder's conviction. C.C.'s testimony, if believed, established substantial evidence upon which the jury could have determined beyond a reasonable doubt that a rape or kidnapping occurred. Moreover, several witnesses established that C.C. was unable to effectively consent or resist because of a conspicuous and substantial impairment, which even the shortest encounter with C.C. apparently revealed.

{¶23} Browder does not claim otherwise, other than to argue that in order to convict him, the state should have presented tangible evidence corroborating C.C.'s version of events, such as signs of physical trauma. Ohio law imposes no such requirement. In fact, forceful resistance or receiving physical injuries are not even elements of rape or kidnapping. *See State v. Leonard*, 8th Dist. Cuyahoga No. 98626, 2013-Ohio-1446, ¶ 46 (a rape victim's testimony need not be corroborated, nor is physical injury an element of rape). We, therefore, overrule Browder's arguments to the contrary.

{¶24} After independently reviewing the entire record and weighing the aforementioned evidence and all reasonable inferences, including the credibility of the witnesses, we cannot say that the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Browder's second assignment of error is without merit. Browder's conviction is supported by sufficient evidence and is not against the manifest weight of the evidence.

{¶25} We affirm Browder's conviction and the judgment of the trial court.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


SEAN C. GALLAGHER, PRESIDING JUDGE

MARY EILEEN KILBANE, J., and
PATRICIA ANN BLACKMON, J., CONCUR