[Cite as *State v. Horn*, 2020-Ohio-3546.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | SIXTH JUDICIAL DISTRICT |
| COUNTY OF WOOD | ) | |

STATE OF OHIO

    Appellee

v.

MICHAEL HORN

    Appellant

C.A. No.    2016WD0053

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF WOOD, OHIO
CASE No.    2015CR0474

DECISION AND JOURNAL ENTRY

Dated: June 30, 2020

CARR, Judge.

{¶1}    This appeal is before the Court pursuant to remand by the Ohio Supreme Court. The Supreme Court reversed in part this Court's decision in *State v. Horn*, 6th Dist. Wood No. WD-16-053, 2018-Ohio-779, and remanded this matter for us to reconsider one issue before remanding the case to the trial court for resentencing. *State v. Horn*, Slip Opinion No. 2020-Ohio-960. We have reviewed the matter in accordance with the Supreme Court's directive. This Court affirms Defendant-Appellant, Michael Horn's, conviction on Count 5 and remands this matter to the Wood County Court of Common Pleas for resentencing.

I.

{¶2}    A jury found Mr. Horn guilty of six counts of rape and six sexually violent predator specifications. Four of his counts pertained to his step-daughter, S.M., and two pertained to his niece, J.M. The six counts stemmed from three distinct acts of rape, each of which resulted in two statutory violations: one under R.C. 2907.02(A)(1)(c) and one under R.C. 2907.02(A)(2). The

trial court determined that the two statutory violations for each rape were allied offenses of similar import, and the State elected to have Mr. Horn sentenced on the three counts that arose from violations of R.C. 2907.02(A)(1)(c). The court sentenced him to ten years to life in prison on each count and ran those terms consecutively for a total of thirty years to life in prison.

{¶3} Mr. Horn appealed from his convictions, and argued,

among other things, that his convictions for violating R.C. 2907.02(A)(1)(c) * * * were not supported by sufficient evidence. In particular, [he] argued that the state had not established that his victims' "ability to resist or consent [was] substantially impaired because of a mental or physical condition," R.C. 2907.02(A)(1)(c); [*Horn*, 2018-Ohio-779, at ¶ 52]. The court of appeals rejected this argument, along with [his] other assignments of error, and affirmed the judgment of the trial court. Count 1 was affirmed on the basis of sleep as a substantial impairment, [*Horn*, 2018-Ohio-779, at ¶ 56-58], Count 3 on the basis of his familial relationship with S.M., *id.* at ¶ 59-60, and Count 5 on the basis of both J.M.'s low functioning and familial relationship with [Mr.] Horn, *id.* at ¶ 35, 61-62.

*Horn*, 2020-Ohio-960, at ¶ 4. Following his direct appeal, Mr. Horn sought review in the Ohio Supreme Court.

{¶4} On appeal to the Supreme Court, Mr. Horn argued that "[a] familial relationship is not a 'mental or physical condition' for purposes of R.C. 2907.02(A)(1)(c) * * *." *Id.* at ¶ 6. The Supreme Court agreed and found that the State could not rely on his status as S.M.'s step-father and J.M.'s uncle to prove his convictions under that subsection. *Id.* at ¶ 12-13. Because the only evidence the State had offered in support of his conviction on Count 3 was his familial relationship with S.M., the Supreme Court reversed that conviction. *Id.* at ¶ 13. As to Count 5, the Supreme Court noted that the Sixth District's opinion referenced an additional ground in support of the conviction: the fact "that J.M. [was] 'low functioning' * * *." *Id.* The Supreme Court declined to decide in the first instance whether that additional ground, standing alone, would be sufficient to support Mr. Horn's conviction. Consequently, it reversed his conviction on Count 5 and remanded

the matter to this Court to reconsider "whether that ground alone supports the conviction under Count 5 * * * and subsequently to remand to the trial court for resentencing." *Id.*

{¶5} Mr. Horn's appeal is now before this Court. Because the Supreme Court's remand only concerns Count 5 and the sufficiency of the State's evidence on that count, we limit our review to that issue.

II.

**ASSIGNMENT OF ERROR V**

MR. HORN'S CONVICTION[] FOR [A] VIOLATION[] OF R.C. SEC. 2907.02(A)(1)(c) [IS] NOT SUPPORTED BY LEGALLY SUFFICIENT EVIDENCE.

{¶6} In his fifth assignment of error, Mr. Horn argues that his rape conviction is based on insufficient evidence because the State failed to prove that J.M. suffered from a mental or physical condition that substantially impaired her ability to resist or consent to sexual conduct. We do not agree.

{¶7} When reviewing the sufficiency of the evidence, this Court must review the evidence in a light most favorable to the prosecution to determine whether the evidence before the trial court was sufficient to sustain a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 279 (1991).

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id.* at paragraph two of the syllabus. "This standard is very narrow and tests only whether there was evidence presented which supports each element of the prima facie case." *Flowers v. Siefer*, 6th Dist. Lucas No. L-16-1002, 2017-Ohio-1310, ¶ 83.

**{¶8}** The rape statute provides, in relevant part, that no person

> shall engage in sexual conduct with another who is not [his] spouse * * * when * * * [t]he other person's ability to resist or consent is substantially impaired because of a mental or physical condition * * * and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition * * *.

R.C. 2907.02(A)(1)(c). "Based on its context in R.C. 2907.02(A)(1)(c), the word 'condition' means '[a] state resulting from a physical or mental illness,' *Shorter Oxford English Dictionary* 483 (Sixth Ed.2007), or 'a usually defective state of health,' prerequisite, or restricting factor, *Merriam-Webster's Collegiate Dictionary* 259 (11th Ed.2020)." *Horn*, 2020-Ohio-960, at ¶ 10.

> "Substantial impairment" is "a present reduction, diminution or decrease in the victim's ability, either to appraise the nature of his conduct or to control his conduct." *State v. Zeh*, 31 Ohio St.3d 99, 103-104 (1987). "Substantial impairment does not have to be proven by expert medical testimony; rather, it can be shown to exist by the testimony of people who have interacted with the victim, and by allowing the trier of fact to do its own assessment of the person's ability to appraise or control his or her conduct." *State v. Brady*, 8th Dist. Cuyahoga No. 87854, 2007-Ohio-1453, ¶ 78; *State v. Acosta*, 6th Dist. Lucas No. L-09-1120, 2010-Ohio-5166, ¶ 22. The determination of substantial impairment is made on a case-by-case basis with "great deference" to the trier of fact. *State v. Brown*, 5th Dist. Richland No. 2016 CA 0043, 2017-Ohio-1114, ¶ 47.

*Horn*, 2018-Ohio-779, at ¶ 36.

**{¶9}** J.M. was fourteen years old when the events herein transpired and sixteen years old at the time of trial. Though she was sixteen when she testified, she brought a stuffed animal with her to the stand as "a comforting item." She testified that she was in high school and had attended multiple schools over the years. She denied ever taking honors classes and indicated that she was currently enrolled in several basic subjects, including a life skills class where she learned "how to use a credit card, checks, what to do to get a job and stuff like that." When the prosecutor asked her whether she had ever taken a physics class, she indicated that she believed she had and asked, "Isn't physics, like, gym or something?"

{¶10}  J.M.'s mother indicated that J.M. had ADHD and had been diagnosed at the age of three.  She testified that J.M. took medication for her ADHD and Mr. Horn was aware of that fact because he was familiar with that medication and had explained its function to her when it was prescribed to J.M.  J.M.'s mother admitted that she once asked Mr. Horn to speak to J.M. about sex because she discovered that J.M. was chatting with males online and the males were using explicit language.  She stated that J.M. did not understand the implications of those conversations and was participating as "a child" rather than in a sexual way.  Indeed, on direct examination, J.M. explained several times what Mr. Horn's penis looked like, but did not know what the term erection meant.  She also could not describe to the jury what her understanding of an erect penis was.

{¶11}  S.M., J.M.'s cousin, testified that J.M. frequently came to her house and spent the night when they were a few years younger.  She and her mother both testified that J.M. had poor hygiene.  S.M. stated that, when J.M. would stay with them, her mother would have to inspect J.M. after her showers and, oftentimes, would have to send J.M. back to the shower to wash again.

{¶12}  Deputy Chief Todd Kitzler investigated this matter after J.M. reported that Mr. Horn had sexually abused her.  He had the opportunity to speak with J.M. and described her as "pretty naive."  The deputy chief noted that J.M. spoke calmly when she relayed what had happened to her and did not cry.  He indicated that she was "a little slow" and that "you could tell that * * * she's low functioning[.]"

{¶13}  Mr. Horn challenges the sufficiency of his conviction, but his argument amounts to nothing more than an invocation of the statutory language set forth in R.C. 2907.02(A)(1)(c).  His brief contains the sufficiency standard of review and a blanket statement that "the state failed to present sufficient evidence that [J.M.] * * * [was] substantially impaired at the time of the offense, or that [he] knew or had reason to believe that [she] [was] substantially impaired."  His

argument does not contain any citations to the record or to supporting case law. *See* App.R. 16(A)(7).

{¶14} Viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have concluded that the State proved, beyond a reasonable doubt, that J.M.'s ability to resist Mr. Horn was substantially impaired by a mental condition and Mr. Horn had knowledge of that impairment. *See Jenks*, 61 Ohio St.3d 259 at paragraph two of the syllabus. The jury heard testimony that J.M. had ADHD and took medication for that condition. There was evidence that Mr. Horn was aware of that fact, as well as the fact that J.M. did not understand the implications of the sexually explicit chats she was having online. The jury heard testimony that J.M. was "a little slow" and "low functioning[.]" They also heard testimony that she frequently had poor hygiene and had to be reminded to wash properly. They were able to listen to the sixteen-year-old's testimony, during which she held a teddy bear, was unable to explain what an erection was, and confused physics class with physical education class. *See Acosta*, 2010-Ohio-5166, at ¶ 22, quoting *Brady*, 2007-Ohio-1453, at ¶ 78. Based on the foregoing, the jury reasonably could have concluded that J.M. suffered from a mental condition that substantially impaired her ability to consent or resist. *See* R.C. 2907.02(A)(1)(c); *Horn*, 2018-Ohio-779, at ¶ 35. They also reasonably could have concluded that Mr. Horn was aware of that fact and took advantage of it when he engaged in sexual conduct with her. *See* R.C. 2907.02(A)(1)(c). Because Mr. Horn has not shown that his rape conviction on Count 5 is based on insufficient evidence, we reject his argument to the contrary. Mr. Horn's fifth assignment of error is overruled.

III.

{¶15} This Court has reconsidered Count 5 of Mr. Horn's indictment in accordance with the Ohio Supreme Court's remand directive and has concluded that the State presented sufficient

evidence in support of that conviction. As such, that portion of Mr. Horn's fifth assignment of error is overruled. Pursuant to the Supreme Court's decision, which reversed Count 3 of Mr. Horn's indictment, this matter still must be remanded to the trial court for resentencing. *See Horn*, 2020-Ohio-960, at ¶ 13. Accordingly, the judgment of the Wood County Court of Common Pleas is affirmed as it relates to Count 5 and remanded to the trial court for resentencing, pursuant to the Supreme Court's decision. All other outstanding motions are denied.

Judgment affirmed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wood, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

CALLAHAN, P. J.
TEODOSIO, J.
CONCUR.

(Callahan, P. J., Carr, J., and Teodosio, J., of the Ninth  District Court of Appeals, sitting by assignment.)


APPEARANCES:

NEIL S. MCELROY, Attorney at Law, and ANDREW R. MAYLE, Attorney at Law, for Appellant.

PAUL A. DOBSON, Prosecuting Attorney, and DAVID T. HAROLD, Assistant Prosecuting Attorney, for Appellee.