[Cite as *State v. Jordan*, 2022-Ohio-1512.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. C-210198 |
| | | C-210199 |
| Defendant-Appellee, | : | TRIAL NOS.   C-19CRB-24951A |
| | | C-19CRB-24951B |
| vs. | : | |
| JOEL JORDAN, | : | |
| | | *O P I N I O N.* |
| Plaintiff-Appellant. | : | |

Criminal Appeals From: Hamilton County Municipal Court

Judgment Appealed From Are: Reversed and Appellant Discharged in C-210198;
Dismissed in C-210199 and Case Remanded.

Date of Judgment Entry on Appeal: May 6, 2022

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *Ronald Springman,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller,* Hamilton County Public Defender, and *Sarah E. Nelson,* Assistant Public Defender, for Defendant-Appellant.

**Bock, Judge.**

{¶1}   Appellant-defendant Joel Jordan appeals his conviction for one count of sexual imposition in violation of R.C. 2907.06(A)(2) in the appeal numbered C-210198. For the following reasons, we sustain Jordan's first assignment of error, reverse his conviction for sexual imposition in violation of R.C. 2907.06(A)(2), and discharge him on that count. The appeal numbered C-210199 is dismissed for lack of jurisdiction. We remand the appeal numbered C-210199 to the trial court for sentencing and an entry of a final, appealable order.

## I. Facts and Procedure

{¶2}   In 2019, Jordan worked as a night supervisor at the Samuel Bell House for the Sightless ("Bell House"), a residential facility for individuals with visual impairments. As part of his employment, Jordan had an apartment in the Bell House. He worked nights and weekends serving Bell House residents coffee and sandwiches, and was "there in case of an emergency." At the time, S.W., the victim, was 35 years old and a resident at the Bell House. While S.W. is legally blind, she has limited vision in her right eye—she can see approximately six feet in front of her.

{¶3}   Surveillance footage showed Jordan alone with S.W. in the Bell House dining room and hallways. In the dining room, Jordan served her coffee and commented on her weight. He suggested that she needed to be measured. She left the room. Jordan intercepted her near the fitness center and walked her to his room.

{¶4}   S.W. testified that Jordan invited her to his apartment, where he tried to find a tag on her clothing and asked her to undress. She testified that, after she undressed, Jordan felt her breast. She felt "very uncomfortable." Jordan asked about masturbation, instructed her about how to masturbate, and touched the outside of her genitals. She told him she did not like it and slapped his hand away. Jordan told her

2

to be more comfortable around men and asked if she had seen a penis. She said no, and he let her touch his genitals. But she felt awkward and uncomfortable, so she told Jordan it was her bedtime, got dressed, and left the room. As she was leaving, Jordan told her this was their "little secret." When she returned to her room, she told her father what happened and asked if she had just survived a sexual assault. She reported the incident to the Bell House director in an e-mail.

{¶5} David Story, the current Bell House director, testified that the Bell House serves individuals "from all walks of life" with the sole commonality that they "meet the IRS definition of being legally blind." According to Story, employees were responsible for preparing and serving meals, cleaning the facility, clearing potential trip hazards, and assisting residents with tasks like phone calls and reading mail. Story testified that the Bell House is not a medical facility, nursing facility, or an assisted-living home. Rather, he described it as an "independent facility with benefits" that provides no medical care for the residents. Story knew S.W. from helping her clean her room and serving her food and drink.

{¶6} Detective Mike Lampe testified that he investigated the allegations, and as part of his investigation, he conducted a lengthy interview with S.W. and her mother. According to Lampe, S.W. "clearly understood my questions and answered the questions and was engaging with the conversation." Lampe was aware of S.W.'s "medical conditions" because S.W. and her mother "talked to me at length" about them. Yet, S.W. and her mother pointed out that she was a high school graduate and her own legal guardian. Lampe also interviewed Jordan, who denied all sexual contact with S.W. Instead, Jordan told Lampe that S.W. had poor hygiene, "it was not uncommon for her not to bathe," and she frequently defecated in her clothes.

{¶7} Finally, Jordan testified and denied all sexual contact with S.W. Instead,

3

he testified that she sat silently in his room while he was on his phone. Jordan explained that he initially commented about S.W.'s weight out of concern that she was underweight. According to Jordan, other staff members shared his concerns. Jordan testified that he had struggled with his weight in the past and wanted to help her track and maintain her weight.

{¶8}  The parties stipulated that

[S.W.] was referred for a psychological assessment which was conducted by Thaddeus J. Nestheide, Psy.D. on or about April 4, 2019. Dr. Nestheide, is a clinical psychologist licensed in Ohio. Based upon that assessment, it was the opinion of Dr. Nestheide that [S.W.] does not have the capacity to consent to sexual activity.

{¶9}  The jury found Jordan guilty of two counts of sexual imposition. The court merged Jordan's conviction for sexual imposition in violation of R.C. 2907.06(A)(1) into his conviction for sexual imposition in violation of R.C. 2907.06(A)(2), and sentenced Jordan to a 60-day term of incarceration.

{¶10}  Jordan appeals his convictions.

## II. Law and Analysis

{¶11} Jordan raises three assignments of error. In his first assignment of error, Jordan challenges the sufficiency of the evidence supporting his conviction for sexual imposition in violation of R.C. 2907.06(A)(2).

{¶12} A sufficiency challenge tests the adequacy of the evidence and is a question of law we review de novo. *State v. Dent,* 163 Ohio St.3d 390, 2020-Ohio-6670, 170 N.E.3d 816, ¶ 15, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). Our task is to determine " 'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the

4

essential elements of the crime proven beyond a reasonable doubt.' " *State v. Cole-Walker*, 1st Dist. Hamilton No. C-200038, 2021-Ohio-1507, ¶ 7, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶13} A defendant is guilty of sexual imposition under R.C. 2907.06(A)(2) if the defendant has sexual contact with another person and the defendant "knows that the other person's * * * ability to appraise the nature of or control of the offender's or touching person's conduct is substantially impaired." For purposes of this assignment of error, Jordan does not challenge the evidence of sexual contact.

{¶14} The term "substantially impaired" is commonly understood to be consistent with "a present reduction, diminution, or decrease in the victim's ability" to control, or appraise the nature of, the defendant's conduct. *State v. Zeh,* 31 Ohio St.3d 99, 103-104, 509 N.E.2d 414 (1987) (interpreting "substantial impairment" under R.C. 2907.03(A)(2)). Ohio courts have routinely applied this definition in cases of gross sexual imposition and rape of a victim impaired due to a cognitive disability, or impaired due to voluntary intoxication. *State v. Yerkey*, 7th Dist. Mahoning No. 20MA0087, 2021-Ohio-3331, ¶ 29.

{¶15} Jordan does not challenge the evidence of a substantial impairment. The parties stipulated to the fact that S.W. lacked the capacity to consent to sexual activity. The primary dispute is whether the evidence produced at trial was sufficient to establish Jordan's knowledge of her substantial impairment.

{¶16} A person acts with "knowledge of circumstances when [he] is aware that such circumstances probably exist." R.C. 2901.22(B). When a defendant's "knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if [the defendant] subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid

learning the fact." *Id.* A defendant's knowledge "may be reasonably inferred from a combination of the victim's demeanor and others' interactions with the victim." *State v. Foster*, 2020-Ohio-1379, 153 N.E.3d 728, ¶ 48 (8th Dist.), citing *State v. Jones*, 8th Dist. Cuyahoga No. 101311, 2015-Ohio-1818, ¶ 43, citing *State v. Novak*, 11th Dist. Lake No. 2003-L-077, 2005-Ohio-563, ¶ 25. Further, this knowledge may be evident from the defendant's relationship and interaction with the victim. *See State v. Horn,* 6th Dist. Wood No. 2016WD0053, 2020-Ohio-3546, ¶ 14.

<u>Knowledge of Substantial Impairment</u>

{**¶17**}  For instance, in *State v. Horn* the victim's mother testified that the defendant—the victim's uncle—was aware that the victim took medication for ADHD, participated in sexually explicit online chats, and struggled with poor hygiene. *Id.* (finding the evidence sufficient to support a conviction for rape in violation of R.C. 2907.02(A)(1)(c)). Indeed, the victim's mother asked the defendant to speak to the victim about the chats because she "did not understand the implications of those conversations and was participating as 'a child.' " *Id.* at ¶ 10. And the investigating officer testified that the victim was "a little slow" and "you could tell that * * * she's low functioning." *Id.* at ¶ 11. When the victim testified, she held a teddy bear, struggled to explain what an erection was, and could not distinguish her physics class from her physical education class. *Id.* at ¶ 14.

{**¶18**}  In *State v. Novak*, the adult victim's literacy teacher testified that he disclosed to the defendant—a teacher's aide with experience working with individuals with learning disabilities—that the victim "functioned on a first or second grade level." *Novak* at ¶ 25 (finding the evidence sufficient to support a conviction for gross sexual imposition in violation of R.C. 2907.05(A)(5)). The evidence included a Christmas card given to the defendant by the victim that "clearly demonstrated Doe's childlike

mental capabilities." *Id.* at ¶ 25. The jury heard testimony that the victim was "often confused and easily frustrated when giving responses" and uncertain "about the meaning of common words, such as 'scandal,' 'volunteer,' 'massage,' 'intimate,' and 'resist.' " *Id.* at ¶ 23.

{¶19} Lay witness testimony may be particularly probative of a defendant's knowledge when the witness "observed within minutes of conversing with her that [the victim] had some form of mental impairment or other cognitive disabilities." *State v. Browder,* 8th Dist. Cuyahoga No. 99727, 2014-Ohio-113 (finding the evidence sufficient to support a conviction for rape in violation of R.C. 2907.02(A)(1)(c)). Indeed, in *Browder* emergency responders testified that their "brief conversations with [the victim] revealed several indications of her cognitive disabilities." *Id.* at ¶ 2. Also, the victim "testified in detail, although through mostly childish vernacular." *Id.* at ¶ 5.

{¶20} Jordan maintains that the state presented insufficient evidence that he knew of S.W.'s substantial impairment. We agree. The testimony from S.W. and Jordan established that their interactions were limited to serving her coffee and sandwiches during his night and weekend shifts. Bell House employees provide no medical care for residents. Indeed, Story testified that the Bell House is not a medical-care facility, not an assisted-living facility, and not a nursing home. Rather, it is an "independent living facility," with residents whose sole commonality is having a visual impairment. There was nothing in the record to suggest that Jordan's interactions with S.W. demonstrated knowledge of a substantial impairment.

{¶21} Certainly, Lampe testified that Jordan remarked that S.W. had poor hygiene—"it was not uncommon for her" to defecate in her clothing and not bathe. But without more, this fails to establish that Jordan knew S.W.'s ability to control his

7

conduct, or appraise the nature of his conduct, was substantially impaired. *Compare Horn,* 6th Dist. Wood No. 2016WD0053, 2020-Ohio-3546, at ¶ 14. Unlike in *Horn,* we can find nothing in the record to suggest that Jordan should have perceived a substantial impairment. In *Horn,* the investigating officer interviewed the victim and testified that her substantial impairment was apparent. *Id.* Here, there is no evidence that any individual who interacted with S.W. perceived a substantial impairment.

**{¶22}** Rather, Lampe testified that S.W. "clearly understood [his] questions and answered the questions and was engaging with the conversation." Lampe only knew of her challenges because her mother disclosed that information to him. And there is nothing in Story's testimony to suggest that S.W.'s cognitive challenges would have been apparent to Jordan. The state needed to adduce some evidence that Jordan had some knowledge of this impairment, but not a single witness testified to that effect. Even when we view the evidence in a light most favorable to the state, the only conclusion drawn from the testimony in this case is that S.W.'s unspecified cognitive limitation is not self-evident.

**{¶23}** Unlike the victims in *Horn* and *Browder,* there is nothing in S.W.'s testimony or her demeanor in the surveillance footage to suggest that her unspecified cognitive limitation was readily discernible. And "opening statements are not evidence" upon which a jury may rely; rather, opening statements "serve merely as previews of a party's claims and are designed to help the jury follow the evidence as it is presented later in the trial." *Parrish v. Jones,* 138 Ohio St.3d 23, 2013-Ohio-5224, 3 N.E.3d 155, ¶ 29.

**{¶24}** The state maintains that S.W.'s visual impairment, and Jordan's knowledge of her visual impairment, supported his conviction under R.C. 2907.06(A)(2). But generally, individuals with visual impairments are able to consent

8

to sexual activity, and are able to appraise the nature of, and control, another person's touching. We cannot find, and the state does not cite to anything in the record, suggesting a causal nexus between S.W.'s reduced vision and her inability to control or appraise the nature of Jordan's conduct.

{¶25} The state has a strong interest in protecting vulnerable members of the population and ensuring that an individual with a cognitive or physical disability is able to appraise and control the nature of another person's conduct. To that end, the General Assembly criminalized sexual contact when the defendant knows the victim's ability to control or appraise the nature of the defendant's conduct is substantially impaired. *See* R.C. 2907.06(A)(2). But the mere existence of a physical or cognitive disability is not dispositive of whether a victim's ability to control or appraise the nature of the defendant's conduct is substantially impaired. Rather than viewing a disability as a proxy for incapacity, a known disability must substantially impair an individual's ability to appraise the nature of, or control, the other person's conduct. To the extent that the statute is ambiguous in this regard, familiar rules of statutory interpretation mandate that we read criminal statutes "so as to apply the statute only to conduct that is clearly proscribed." *State v. Elmore,* 122 Ohio St.3d 472, 2009-Ohio-3478, 912 N.E.2d 582, ¶ 38, citing *United States v. Lanier*, 520 U.S. 259, 266, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997).

{¶26} At trial, the state presented insufficient evidence to show that Jordan knew of S.W.'s substantial impairment. Because that knowledge is an element of sexual imposition under R.C. 2906.07(A)(2), the state did not satisfy its legal burden. Thus, we sustain Jordan's first assignment of error. Because we find the evidence in support of this conviction insufficient, a retrial is barred. *See State v. Flannery*, 1st Dist. Hamilton No. C-140426, 2015-Ohio-1360, ¶ 15.

Second and Third Assignments of Error

**{¶27}** In his second assignment of error, Jordan contends that the trial court failed to properly instruct the jury on the elements of sexual imposition in violation of R.C. 2907.06(A)(2). And in his third assignment of error, Jordan argues that his "convictions" were against the manifest weight of the evidence. Our disposition of Jordan's first assignment of error renders his second assignment of error moot, and we decline to address it. *State v. Harris*, 1st Dist. Hamilton No. C-210391, 2022-Ohio-1021, ¶ 1, citing App.R. 12(A)(1)(c). Likewise, his manifest-weight challenge for this conviction is moot.

**{¶28}** Turning to the count of sexual imposition under R.C. 2907.06(A)(1), the trial court merged that count into the count of sexual imposition under R.C. 2907.06(A)(2). When the trial court merged that count, it did not impose a sentence on that count and never entered a final, appealable order. As such, this court lacks jurisdiction over the appeal numbered C-210199. Accordingly, we dismiss the appeal numbered C-210199 for lack of a final, appealable order and remand this matter to the trial court for sentencing and entry of a final order.

### III. Conclusion

**{¶29}** Because there was insufficient evidence to support Jordan's conviction for sexual imposition under R.C. 2907.06(A)(2), Jordan's conviction is reversed and he is discharged on that count in the appeal numbered C-210198. The appeal numbered C-210199 is dismissed and the case remanded for sentencing and entry of a final order.

Judgment accordingly.

**BERGERON, P.J.,** concurs.
**WINKLER, J.,** concurs in part and dissents in part.

**WINKLER, J.,** concurring in part and dissenting in part.

**{¶30}** The evidence adduced by the state in this case shows that Jordan used his role as a supervisor of a blind, cognitively-impaired victim to lure her into his office under the pretense of his concern for her physical health, and that once he got the victim into a state of undress, he engaged her in sexual contact. As a result, Jordan's conviction for sexual imposition under R.C. 2907.06(A)(2) was supported by sufficient evidence, and I dissent from that portion of the majority's opinion reversing Jordan's conviction and discharging him as to that count.

**{¶31}** After a jury trial, Jordan was convicted of sexual imposition under R.C. 2907.06(A)(2), which required the state to prove that Jordan had sexual contact with the victim knowing that the victim's ability "to appraise the nature of or control [Jordan's] * * * conduct [was] substantially impaired." In *State v. Zeh*, the court explained that "substantial impairment" is a "reduction, diminution or decrease in the victim's ability." *State v. Zeh*, 31 Ohio St.3d 99, 103, 509 N.E.2d 414 (1987).

**{¶32}** The "substantial impairment" portion of the sexual-imposition statutes contemplates protecting persons under a variety of circumstances, for instance where a victim has reduced cognitive abilities, *see State v. Yerkey*, 7th Dist. Mahoning No. 20 MA 0087, 2021-Ohio-3331, where the victim was sleeping at the time of the sexual contact, *see State v. Rodenberger*, 6th Dist. Lucas No. L-19-1163, 2020-Ohio-6979, or where the victim was voluntarily intoxicated, *see State v. Springs*, 8th Dist. Cuyahoga No. 103539, 2016-Ohio-5323.

**{¶33}** At the root of the "substantial impairment" inquiry then is whether the victim has a reduced "ability to act or think." *State v. Browder*, 8th Dist. Cuyahoga No. 99727, 2014-Ohio-113, ¶ 19, citing *Zeh* at 103-104. In other words, a victim can be

11

substantially impaired by a diminished physical state, meaning the victim has a reduced ability to act by resisting or fleeing; a diminished mental state, meaning the victim has a reduced ability to consent to sexual activity; or some combination of diminished physical and mental states.

{¶34} In opening statements, the prosecutor told the jury that the evidence would show that the victim is legally blind and slightly developmentally delayed. Jordan's counsel echoed the prosecutor's comments by telling the jury in opening statements that the victim is "legally blind" and "does have some disabilities and with those disabilities, it carries a constellation of physical and mental manifestations." Jordan's counsel continued to tell the jury that "this is a case involving a vulnerable victim" and that "[t]his is a member of society that we all should protect and ensure that they are able to be safe from anyone who would abuse them or take advantage of them."

{¶35} Given the opening statements by both the prosecutor and defense counsel, it is no surprise that the victim's inability to consent to sexual contact was uncontested at trial. Jordan and the state even stipulated to the admission of a report from a psychologist who had interviewed the victim and in which the psychologist had concluded that the victim did not have the capacity to consent to sexual activity.

{¶36} Even though the majority does not dispute the victim's substantial impairment, it nevertheless determines that the state failed to provide sufficient evidence from which the jury could infer that Jordan was aware of the victim's impairment. I disagree. A defendant's knowledge of the victim's substantial impairment can be inferred from the defendant's interactions with the victim, as well as the other witnesses' interactions with the victim, and the trier of fact's own

observations of the victim. *Browder*, 8th Dist. Cuyahoga No. 99727, 2014-Ohio-113, at ¶ 17, citing *State v. Novak*, 11th Dist. Lake No. 2003-L-077, 2005-Ohio-563, ¶ 25.

{¶37} Jordan was acquainted with the victim, because he supervised the facility in which the victim lived. Jordan worked at the facility 12 hours a day, six days a week, and he lived at the facility as well. Jordan used his superior and trusted relationship with the victim to persuade her to enter his office in the middle of the night to "measure" her. Jordan certainly knew the victim was legally blind and would have a reduced ability to react by fleeing or running away from the compromising situation in which he put her. This evidence alone is sufficient to show Jordan's knowledge of the victim's substantial impairment.

{¶38} The majority determines that a person who is legally blind is generally capable of consent to sexual activity, and so determines that Jordan's knowledge of the victim's blindness is not sufficient to show knowledge of substantial impairment. The majority's determination wholly ignores that impairment under R.C. 2907.06(A)(2) can be physical, i.e., a reduced ability to act, or mental, i.e., a reduced ability to think. *See Browder*, 8th Dist. Cuyahoga No. 99727, 2014-Ohio-113, at ¶ 19, citing *Zeh* at 103-104. A person who is blind has a reduced physical ability.

{¶39} Not only was Jordan aware of the victim's physical impairment, but the jury could infer that Jordan was aware of the victim's cognitive limitations as well, based not only on Jordan's relationship to the victim, but on the overwhelming and uncontested evidence presented as to the victim's cognitive limitations. In addition to the psychologist's report concluding that the victim lacked the ability to consent to sexual activity, the jury also heard the investigating detective testify regarding the victim's cognitive limitations. The jury was able to watch the victim testify live in court,

and therefore the jury would be in the best position to make a determination regarding whether Jordan would have been aware of the victim's vulnerable condition. *See Browder* at ¶ 18.

{**¶40**} Most importantly, the jury heard the victim testify that on the night in question, the victim, as a 35-year-old woman, permitted Jordan to take her into his office in the middle of the night, with no one else around, to "measure" her. Jordan was not a nurse or a medical professional, and he would have no reason to act as he did unless he had criminal intent. It is hard to imagine that an adult female of normal cognitive abilities would have been persuaded by Jordan's feigned concerns, but that is precisely why Jordan was able to commit his crime. The inference that can be made on these facts is that Jordan knew he could take advantage of the victim's reduced cognitive abilities, as well as her physical disability, and trick her into a state of undress. Even after Jordan's offensive sexual contact, the victim was still unsure as to whether a crime had occurred, so she had to call her parents and ask them.

{**¶41**} The jury had more than ample evidence from which it could infer Jordan's knowledge of the victim's substantial impairment. Jordan's conviction under R.C. 2907.06(A)(2) should be affirmed; therefore, I dissent from the majority decision in the appeal numbered C-210198. I concur in the majority's decision dismissing the appeal numbered C-210199 for lack of a final, appealable order.

Please note:

The court has recorded its own entry on the date of the release of this opinion.